**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10247 |
| Plaintiff - Appellee, | D.C. No. 3:07-cr-00057-LRH-VPC-1 |
| v. | |
| CYRIL EGU, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and submitted May 12, 2010
San Francisco, California

Before: SILVERMAN, FISHER and M. SMITH, Circuit Judges.

Defendant Cyril Egu appeals both his conviction and sentence on two counts

of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and two counts of

access device fraud, in violation of 18 U.S.C. § 1029. The district court sentenced

Defendant to 72 months in prison: concurrent 24-month terms for both § 1029

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

convictions, plus two consecutive 24-month terms for each § 1028A conviction. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. For the following reasons, we affirm.

First, the district court did not abuse its discretion under Federal Rule of Evidence 404(b) by admitting into evidence a Nigerian passport bearing Defendant's photograph and the name "John Lawrence Egumasi." The passport was highly relevant "as proof . . . of identity." *See* Fed. R. Evid. 404(b). The perpetrator of the offenses charged in the indictment used the alias "John Lawrence," and authorities found the passport among other evidence of the charged offenses. Beyond arguing the passport's irrelevance, Defendant has failed to show how the passport's admission was unduly prejudicial. *See United States v. Banks*, 514 F.3d 959, 976–77 (9th Cir. 2008). This is especially so in light of the district court's contemporaneous limiting instruction. *See United States v. Hollis*, 490 F.3d 1149, 1153 (9th Cir. 2007).

Second, the district court did not abuse its discretion by applying a two-level sophisticated means enhancement, per U.S.S.G. § 2B1.1(b)(9)(C). In finding sophisticated means, the district court considered that Defendant had fraudulently opened new credit accounts using the victims' personal identifiers; worked in concert with his wife to get those identifiers through her business; had

fraudulently-purchased goods delivered to upscale, vacant homes in order to avoid detection; and made bursts of purchases on new credit accounts before creditors shut the accounts down. The district court properly considered these facts, which support a finding that Defendant's offense conduct was "especially complex or especially intricate." U.S.S.G. § 2B1.1, cmt. n.8(B); *see also United States v. Aragbaye*, 234 F.3d 1101, 1108 (9th Cir. 2000) (reading a similar enhancement in U.S.S.G. § 2T1.4(b)(2) as requiring the offense to be "'sufficiently more complex' than routine [offenses]" (quoting *United States v. Ford*, 989 F.2d 347, 351 (9th Cir. 1993))).

Defendant nevertheless argues that the district court improperly considered the number of victims, which is covered by U.S.S.G. § 2B1.1(b)(2)(A), and the value of his extensive purchases, which is covered by U.S.S.G. § 2B1.1(b)(1)(E). However, the district court properly considered the number of victims—that is, the number of fraudulent accounts opened—because the use of multiple victims to obtain multiple cards was a sign of sophistication. The court did not engage in impermissible double counting because § 2B1.1(b) and the sophisticated means enhancement serve distinct purposes under the Guidelines. *See United States v. Holt*, 510 F.3d 1007, 1011 (9th Cir. 2007) ("[D]ouble counting is . . . authorized and intended by the Sentencing Guidelines when each invocation of the behavior

serves a unique purpose under the Guidelines." (internal quotation marks omitted)). Moreover, Defendant mischaracterizes the district court's analysis of his purchases: the court below considered the manner in which Defendant made his purchases, not the value of those purchases.

Defendant also unpersuasively challenges the district court's focus on his use of the victims' personal identifiers, relying on U.S.S.G. §§ 2B1.1(b)(10)(C)(ii) and 2B1.6. Section 2B1.1(b)(10)(C)(ii) addresses merely the possession of multiple means of identification, not the use of such means. Section 2B1.6—which governs § 1028A sentences—prohibits a sentencing court from "apply[ing] any specific offense characteristics for the transfer, possession, or use of a means of identification when determining the sentence" for the offense underlying a § 1028A conviction. U.S.S.G. § 2B1.6, cmt. n.2. But § 2B1.6 does not explicitly exclude imposition of § 2B1.1's sophisticated means enhancement, *see United States v. Garro*, 517 F.3d 1163, 1170 (9th Cir. 2008), and nothing in the Guidelines prohibits a district court from considering a defendant's use of a means of identification when the court makes its sophisticated means inquiry.

When viewed together, each of the factors that the district court considered demonstrate above-average sophistication, even though they appear relatively simple when viewed in isolation. Accordingly, the district court's finding of

sophisticated means was not clearly erroneous, and it did not abuse its discretion in applying U.S.S.G. § 2B1.1(b)(9)(C)'s two-level enhancement.

Finally, the district court did not abuse its discretion by running Defendant's two § 1028A sentences consecutively. Section 1028A gives district courts discretion to run statutory sentences consecutively, "provided that such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28." 18 U.S.C. § 1028A(b)(4). The Guidelines in turn explicitly address consecutive sentences under § 1028A and offer a non-exhaustive list of factors that district courts should consider. *See* U.S.S.G. § 5G1.2, cmt. n.2(B). Although the Guidelines recommend running § 1028A sentences concurrently where, as here, the underlying offenses are groupable under § 3D1.2, they do not forbid consecutive sentences under such circumstances. *See* U.S.S.G. § 5G1.2, cmt. n.2(B)(ii) ("*Generally*, multiple counts of 18 U.S.C. § 1028A *should* run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2." (emphasis added)).

In this case, the district court opted for consecutive sentences because (1) Defendant victimized multiple people, including some not named in the indictment; (2) Defendant's § 1028A conduct substantially harmed the victims;

and (3) his scheme was sophisticated, extensive, and long-lasting. These three factors, but especially the number of victims, provide a rational and objective basis for imposing consecutive § 1028A sentences, particularly where § 1028A does not itself provide for incremental punishment in cases involving multiple victims. More victims arguably mean more harm, warranting greater punishment.

The district court could have more specifically addressed why consecutive sentences were appropriate despite the groupability of Defendant's underlying convictions. Nevertheless, both § 1028A and the Guidelines give district courts discretion to run § 1028A sentences consecutively, and we cannot say that the district court abused such discretion here.

**AFFIRMED.**