[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 07, 2011
JOHN LEY
CLERK

No. 10-15780
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20252-JAL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTONIO BRADSHAW,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 7, 2011)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Antonio Bradshaw appeals his convictions for credit card fraud, in violation

of 18 U.S.C. § 1029(a)(2) ("Count 1"), and two counts of aggravated identity theft,

in violation of 18 U.S.C. § 1028A(a)(1) ("Counts 2 and 3"), and his 72-month sentence.[1] He presents three arguments for our consideration. After review of the parties' briefs and the record, we affirm.

I.

Bradshaw first claims that the district court abused its discretion by admitting evidence of previous fraud convictions under Federal Rule of Evidence 404(b). Immediately after the court entered the convictions into evidence—over Bradshaw's objection—the court instructed the jury that the previous convictions could be used to determine whether Bradshaw "had the state of mind or intent necessary to commit the crimes charged" or to help establish "the identity of [Bradshaw] . . . as the perpetrator of the crime charged in the indictment." Bradshaw contends that the district court erred in allowing the jury to consider his previous convictions for purposes of establishing identity because the earlier crimes lacked sufficient distinctive characteristics to establish a modus operandi. Moreover, the instant offenses shared no characteristics with his previous transgressions outside of the fact that each involved fraud. Bradshaw also asserts

---

[1] Two different courses of conduct were the focus of Bradshaw's indictment and trial. First, the government alleged that in August 2005, Bradshaw opened a credit card in another individual's ("Victim 1") name. Second, approximately 2 months later, Bradshaw accessed an unknowing couple's ("Victim 2 and Victim 3") line of credit through an "authorized user" credit card that had been issued in his name. The latter is known as an account "take over."

that the other evidence offered at trial was not sufficient to render the district court's error harmless.

We review a district court's decision to admit evidence pursuant to Rule 404(b) for an abuse of discretion. *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009). Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

When determining whether extrinsic-offense evidence may be introduced to prove identity, the likeness of the prior and charged offenses is the "crucial consideration." *United States v. Phaknikone*, 605 F.3d 1099, 1108 (11th Cir. 2010). "The physical similarity must be such that it marks the offenses as the handiwork of the accused. In other words, the evidence must demonstrate a modus operandi," otherwise the evidence is inadmissible under Rule 404(b) as proof of identity. *See id.* We review preserved evidentiary objections for harmless error. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). The government bears the burden of establishing that an error is harmless. *Phaknikone*, 605 F.3d at 1109. "Reversal is warranted only if the error resulted in actual prejudice

3

because it had substantial and injurious effect or influence in determining the jury's verdict." *Id*. (internal quotation marks omitted). We may consider the presence of overwhelming evidence of guilt as a factor in determining that an error is harmless. *Id.*

For purposes of resolving this appeal, we assume that the district court erred by initially allowing the jury to consider Bradshaw's previous convictions to establish identity for the instant offenses. However, such an error does not warrant reversal of his convictions because there was overwhelming evidence apart from these convictions to establish Bradshaw's identity as the perpetrator of the charged offenses; thus any error in admitting the previous convictions was harmless.

Bradshaw states that his "defense at trial was that the government failed to prove he was the person who fraudulently possessed and used" the credit cards at issue. The government introduced ample evidence to directly refute that. For example, as to the credit card obtained in Victim 1's name, the government submitted the following evidence to demonstrate that Bradshaw committed credit card fraud: (1) a credit card was opened under the victim's name and shipped to Bradshaw's Florida address; (2) Bradshaw's first name was the password for the online application for the account; (3) the owner of a pawn shop identified

4

Bradshaw as the individual who pawned several items and then bought them back using the fraudulently obtained credit card. Furthermore, "Antonio Bradshaw" was added as an authorized user of Victim 2 and 3's credit line after a phone call that originated from a number that fraud investigators traced to Bradshaw. The record also contains testimony from a number of merchants who implicated Bradshaw in using both credit cards.[2] After consideration of the record evidence, it is clear that, even without the previous convictions, the government produced overwhelming evidence of Bradshaw's guilt. Accordingly, even if there was error, it was harmless.

## II.

Bradshaw next argues that the district court should have granted his motion for judgment of acquittal on the aggravated identity theft charges. Specifically, he claims that the government failed to establish that he knew he had used identification that belonged to an actual person.

"[A defendant's] conviction must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We

---

[2] Two additional facts minimize any potential for injurious effect. First, the government never argued, to the court or the jury, that the previous convictions should be considered for purposes of establishing identity. More importantly, during jury instructions, the district court properly directed the jury to consider the previous convictions only in determining whether Bradshaw possessed the necessary intent to commit the crimes. That mitigated the initially erroneous statement that the jury could consider the previous convictions for identity purposes.

view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Gomez-Castro*, 605 F.3d 1245, 1248 (11th Cir. 2010) (citations omitted) (internal quotation marks omitted).

"To prove a violation of 18 U.S.C. § 1028A, the evidence must establish 'that the defendant: (1) knowingly transferred, possessed, or used; (2) the means of identification of another person; (3) without lawful authority; (4) during and in relation to a felony enumerated in § 1028A(c).'" *United States v. Barrington*, __ F.3d __, No. 09-15295, slip op. at 24 (11th Cir. August 11, 2011) (footnote omitted) (quoting *United States v. Hurtado*, 508 F.3d 603, 607 (11th Cir. 2007) (per curiam)). Therefore, the government must demonstrate that the defendant knew that the misused identification belonged to an actual person. *Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1894 (2009). That knowledge may be proven with circumstantial evidence. *Gomez-Castro*, 605 F.3d at 1249. "Both the circumstances in which an offender obtained a victim's identity and the offender's later misuse of that identity can shed light on the offender's knowledge about that identity." *Id*. at 1248.

The government provided sufficient evidence to demonstrate that Bradshaw possessed the requisite knowledge to commit aggravated identity theft both by

6

opening a new credit card account and "taking over" an existing credit card account. In the "take over" circumstance, Bradshaw knew that the account could only exist if it were connected to an actual individual. Significant circumstantial evidence also demonstrates that Bradshaw was aware that information used to open the new credit card was connected to an actual person. First, Victim 1 testified that the application submitted contained his correct name, birthday, and social security number. Also, a reasonable jury could infer that Bradshaw would not have sought credit using Victim 1's identification if he did not believe it to be connected to an individual with an actual credit history. *See United States v. Holmes*, 595 F.3d 1255, 1258 (11th Cir. 2010) (per curiam). Moreover, a Chase official testified that a fictitious identity could not be used to secure a line of credit. Even without that testimony, a jury, based on ordinary human experience, could quite easily conclude that credit card companies subject applications to a screener process before subjecting themselves to the risks of extending credit. *Cf. Gomez-Castro*, 605 F.3d at 1249 (explaining that a jury's everyday experience would allow them to conclude that governments verify an applicants identity prior to issuing documents). Based on that evidence, a jury could determine that Bradshaw knew the identifying information he used to obtain a credit card in Victim 1's name was connected to an actual individual. Therefore, we conclude

that reasonable jurors could have found that Bradshaw knew the identities he used

were connected with actual people.

III.

Finally, Bradshaw argues that the district court abused its discretion by

failing to consider the relevant commentary to the Sentencing Guidelines prior to

imposing two partially consecutive sentences for his aggravated identity theft

convictions.  He points out that the Guidelines set out several factors that must be

considered before imposing sentences for multiple counts of conviction, U.S.S.G.

§ 5G1.2, and the district court failed to reference each of those factors during

sentencing.  Bradshaw, however, did not raise this objection to the district court.[3]

Pursuant to§ 1028A, a defendant convicted of aggravated identity theft is

required to serve a two-year term of imprisonment consecutive to any other

sentence imposed.  If a defendant has multiple convictions under § 1028A, the

district court has discretion to determine whether these sentences should run

concurrently with each other.  U.S.S.G. § 2B1.6 cmt. n.1(B); *see also*

§ 1028A(b)(4).  This commentary directs the court to consult the commentary to

---

[3]  Sentencing arguments raised for the first time on appeal, such as Bradshaw's, are reviewed for plain error.  *United States v. Bonilla*, 579 F.3d 1233, 1238–39 (11th Cir. 2009), *cert denied*, 130 S. Ct. 2361 (2010).

U.S.S.G. § 5G1.2 for guidance in making that determination. U.S.S.G. § 2B1.6 cmt. n.1(B). It provides:

> In determining whether multiple counts of 18 U.S.C. 1028A should run concurrently with, or consecutively to, each other, the court should consider the following non-exhaustive list of factors:
>
> (i) The nature and seriousness of the underlying offenses. For example, the court should consider the appropriateness of imposing consecutive, or partially consecutive, terms of imprisonment for multiple counts of 18 U.S.C. 1028A in a case in which an underlying offense for one of the 18 U.S.C. 1028A offenses is a crime of violence or an offense enumerated in 18 U.S.C. 2332b(g)(5)(B).
>
> (ii) Whether the underlying offenses are groupable under § 3D1.2 (Groups of Closely Related Counts). Generally, multiple counts of 18 U.S.C. 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2.
>
> (iii) Whether the purposes of sentencing set forth in 18 U.S.C. 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence for multiple counts of 18 U.S.C. 1028A.

U.S.S.G. § 5G1.2, cmt. n.2(B).

Here, while the district court did not explicitly mention the specific Guidelines commentary that provides the analysis for determining whether multiple aggravated felony convictions warrant concurrent or consecutive

9

sentences, that omission does not constitute plain error. First, Bradshaw points to no binding precedent that requires the district court to explicitly discuss the list of non-exhaustive factors present in comments to U.S.S.G. § 5G1.2. Second, the transcript reveals that the district court did consider the nature and seriousness of the underlying offenses, and it explicitly discussed the § 3553(a) factors. Therefore, it clearly considered two of the three factors in the comments to U.S.S.G. § 5G1.2. Accordingly, we conclude that the district court did not plainly err in applying partially consecutive sentences for the two separate § 1028A convictions.

IV.

For the foregoing reasons, we affirm.

**AFFIRMED.**