**12-39-cr**
*United States v. Chibuko*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

⸻

August Term, 2013

(Argued: October 21, 2013     Decided: March 7, 2014)

Docket No. 12-39-cr

⸻

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

Joey CHIBUKO, AKA Steven Ray BUCKLEY, AKA Steven R. Buckley, AKA
Steven BUCKLEY, AKA Steven BUCKELEY, AKA Joseph Pride,

*Defendant - Appellant.*[*]

⸻

Before:

KATZMAN, *Chief Judge*, KEARSE AND WESLEY, *Circuit Judges*.

⸻

[*]The Clerk of the Court is directed to amend the official caption as set forth above.

1

Defendant-Appellant Joey Chibuko was convicted at trial of various fraud crimes, including three counts of aggravated identity theft, 18 U.S.C. § 1028A, in the United States District Court for the District of Connecticut (Bryant, *J.*). A § 1028A violation carries a mandatory two-year prison sentence, to run consecutively with any other sentence imposed, except that sentences imposed for multiple § 1028A violations may run concurrently with each other. Where, as here, the § 1028A violations are part of the same scheme and involve the same victim, the Guidelines provide that the sentences on those counts should generally run concurrently with each other when the underlying offenses are groupable under Guidelines § 3D1.2. The district court, however, sentenced Chibuko to three consecutive terms on the § 1028A counts without mentioning that general rule or groupability. We therefore **AFFIRM,** in part, and **REMAND**, in part, to the district court for supplementation of the record or, alternatively, for re-sentencing with respect to two of the § 1028A counts.

---

DEVIN MCLAUGHLIN, Langrock Sperry & Wool, LLP, Middlebury, VT, *for Defendant-Appellant.*

SARALA V. NAGALA, (Robert M. Spector, *on the brief)* Assistant United States Attorneys, *for* Deirdre M. Daly, Acting United States Attorney for the District of Connecticut, New Haven, CT, *for Appellee.*

---

PER CURIAM:

Joey Chibuko appeals his judgment of conviction and sentence following trial in the United States District Court for the District of Connecticut (Bryant, *J.*), on nine counts of various fraud crimes, including three counts of aggravated identity theft, 18 U.S.C. § 1028A. Each § 1028A count arose from Chibuko's

impersonation of the same individual. The district court ordered that Chibuko's terms of imprisonment for all three of his § 1028A crimes run consecutively with each other even though two of those § 1028A crimes may fall within Guidelines § 5G1.2 Application Note 2(B)(ii), which describes when the sentences for § 1028A crimes should generally run concurrently with each other. Since the district court did not mention § 5G1.2 or otherwise indicate that it considered this guideline, we remand for additional sentencing proceedings as discussed in our Conclusion *infra*.

**Background**

Defendant-Appellant Joey Chibuko is a Nigerian national. In 1993, he obtained a U.S. tourist visa in Lagos, Nigeria, using false information and traveled to California. Within two weeks of arriving, he applied for a social security number and later fraudulently obtained several California driver's licenses. In December 1993, after his tourist visa expired, Chibuko married an American citizen and in the following year applied for legal residence, again using false information. Chibuko was granted conditional residence that expired in 1997.

3

In October 1996, Chibuko was arrested in Oakland, California, for credit card theft and fraud. By the time charges were filed against him, however, Chibuko had already fled to Massachusetts. Chibuko then used a fraudulently obtained California identity card and social security card to assume the identity of Ray Awommack. As Awommack, Chibuko obtained a job at the Greater Lynn Mental Health and Retardation Association, an operator of group homes for developmentally disabled adults. From July 1998 through October 1998, Chibuko worked weekend shifts at one of its facilities. While working at the home, Chibuko stole the birth certificate of Steven Buckley, one of the group home's residents.

By 2001, Chibuko had relocated to Connecticut, where he used Buckley's birth certificate and social security number to apply for a U.S. passport. Beginning around the same time, Chibuko applied for employment under Buckley's name at two human services agencies, obtained a driver's license, mortgages, credit cards, and bank accounts in Buckley's name, and even used Buckley's identity to vote in the 2008 election. Meanwhile, the real Steven Buckley began receiving notices from collection agencies.

In September 2010, Chibuko was arrested for his fraudulent passport application. The following month, a federal grand jury indicted him for the passport fraud and eight other fraud counts. Counts four, six, and nine of the indictment charged Chibuko with aggravated identity theft under 18 U.S.C. § 1028A, which makes it unlawful to "knowingly . . . use[] . . . a means of identification of another person" while committing any of a list of enumerated felonies. Counts four and nine were based on Chibuko's answers in an I-9 form in connection with his two employment applications, and count six was based on Chibuko's 2008 voter registration application. The case went to trial on May 19, 2011, and on May 24, the jury convicted Chibuko on all nine counts.

Throughout trial and sentencing, Chibuko steadfastly claimed to be Steven Buckley. He professed that Buckley's birthday is his also and that his parents have the same names as Buckley's and are from the same town. He told a story that includes being taken to Nigeria at age three following the death of his mother, where he was raised by his maternal aunt and uncle, Patty and Joseph Chibuko. While growing up, he adopted the name Joey Chibuko, because, as he put it, it sounded more "local."

5

The district court sentenced Chibuko to an effective sentence of 168 months in prison -- including three consecutive twenty-four month terms for his § 1028A crimes. Chibuko, by counsel, appeals only his sentence. *Pro se*, he brings various challenges to his conviction.

**Discussion**

A. 18 U.S.C. § 1028A Sentences

Most criminal statutes provide a range of possible sentences. Section 1028A does not. The sentence is two years' imprisonment. No more. No less. 18 U.S.C. § 1028A(a)(1). The court may not reduce the sentence for the defendant's other crimes to compensate for the additional two years imposed by § 1028A; nor may the court allow a § 1028A sentence to run concurrently with a sentence for any other crime. *Id.* at § 1028A(b)(2)-(3). If a defendant is convicted of more than one offense under § 1028A, the only sentencing decision the court makes is whether the sentences for multiple § 1028A offenses will run concurrently with each other. In making this decision, however, the court must exercise its discretion "in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission." 18 U.S.C. § 1028A(b)(4).

6

The guideline directly relevant to such a determination sets out a "non-exhaustive list of [at least three] factors" that "the court should consider" in determining whether prison terms for multiple § 1028A counts "should run concurrently with, or consecutively to, each other." Guidelines § 5G1.2 Application Note 2(B). The first and third factors are, respectively, "[t]he nature and seriousness of the underlying offenses," *id.* Application Note 2(B)(i), and "[w]hether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence for multiple counts of 18 U.S.C. § 1028A," *id.* Application Note 2(B)(iii). The second factor set out in Application Note 2(B) to § 5G1.2 is "groupability:" "Generally, multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which the *underlying offenses* are groupable under §3D1.2." *id.* Application Note 2(B)(ii) (emphasis added). Section 3D1.2(b) provides that

> [a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: . . . When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

7

Guidelines § 3D1.2(b).  However, the commentary on § 3D1.2(b) states that "[t]his provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm . . . ."  *Id*. Application Note 4.

Under the Guidelines, § 1028A offenses themselves are not groupable.  *See* Guidelines § 3D1.1(b)(2).[1]  Section 1028A offenses "are excluded from application of [§ 3D1.2] . . . because the guideline sentence for each offense is determined only by the relevant statute," which mandates a two-year sentence for each count. Guidelines § 2B1.6 Application Note 3.  In deciding whether to run multiple § 1028A sentences concurrently, however, a court must consider whether the *underlying offenses* -- the crimes during which a false identity was used -- were groupable.  As indicated above, sentences for multiple § 1028A offenses "[g]enerally" should be concurrent with each other where "the underlying offenses are groupable."  Guidelines § 5G1.2 Application Note 2(B)(ii).

_____

[1]The court is required to "*[e]xclude from the application of §§3D1.2-3D1.5 . . . [a]ny count of conviction under 18 U.S.C. § 1028A*." Guidelines § 3D1.1(b)(2) (emphasis added). "[F]or guidance on how sentences for multiple counts of conviction under 18 U.S.C. § 1028A should be imposed," the court is instructed to see "Application Note 2(B) of the Commentary to §5G1.2." *Id*.

8

Chibuko did not object in the district court on the ground that the court failed to consider the underlying offenses' groupability. We thus review only for plain error. *See* Fed. R. Crim. P. 52(b).

In sentencing Chibuko to three consecutive prison terms for his three § 1028A offenses, the district court was aware that it had the authority to run Chibuko's § 1028A sentences concurrently or consecutively.[2] In concluding that the § 1028A sentences should be consecutive rather than concurrent, however, the court made no reference to Guidelines § 5G1.2; no reference to Application Note 2(B); and, no reference to groupability. Although the court went on to consider § 3553(a)(2) factors – as was required by § 5G1.2 Application Note 2(B)(iii) – its statements did not indicate that the court was considering those factors in connection with the issue of consecutiveness versus concurrence.

---

[2]The court stated that "the offenses charged in counts four, six, and nine, [namely] the aggravated identity theft counts[,] carry a two-year consecutive term of imprisonment to any other sentence imposed, resulting in an additional six years of prison for a total effective sentence of 150 to 169 months in prison." Sentencing Transcript 37--38. It does not appear, however, that the court was unaware that the § 1028A sentences could permissibly be imposed concurrently to one another, because its next statement was that "[i]f those sentences are served consecutively [*sic*], the guidelines recommend instead a range of 102 to 121 months," *id*. at 38; this statement makes sense logically and mathematically only if the court meant to say "concurrently" rather than "consecutively."

At sentencing, a district court need not list every possibly relevant guideline in a "robotic incantation[]." *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (*en banc*) (quotation marks omitted). But, neither can a court ignore factors Congress has instructed it to consider. Thus, the amount of explanation required by a district court for its sentencing decision will vary with the circumstances. *Id*. If the facts and the parties' arguments suggest that a Guidelines factor such as groupability is relevant, there should be some indication in the record that the court considered it. Some cases will require an extended discussion of a given factor. Other cases may require only a brief mention or even need none at all. *See id.* In a case where the § 1028A charges clearly arise from unrelated conduct, or where some other factor clearly suggests a consecutive sentence is appropriate, a discussion of groupability is unnecessary. In cases where groupability is relevant, however, there must be some indication that the court considered it.

Here, the facts sufficiently suggest that at most two of the offenses underlying Chibuko's § 1028A offenses -- counts three and eight -- were groupable and therefore it was plain error for the district court not to discuss groupability. Count five, however, the count underlying Chibuko's other § 1028A offense, was clearly not groupable with counts three and eight. *See* Part A.2. We

10

therefore find no error in the district court's failure to discuss groupability with respect to the sentence for this crime.[3]

1. The Job Application Offenses

Chibuko's PSR recommended grouping counts three and eight -- the false employment applications underlying the § 1028A counts four and nine -- and the

---

[3] Several other circuit courts have reviewed § 1028A sentences in which the district court considered the first and third factors from Application Note 2(B), but did not explicitly consider groupability. The resolution of these cases supports the rule we apply today. For example, in *United States v. Dooley*, the Seventh Circuit vacated the defendant's sentence on a plain error analysis after the government admitted that consideration of groupability was "essential" on the facts of the case. 688 F.3d 318, 321 (7th Cir. 2012). In contrast, in *United States v. Dvorak*, the Eighth Circuit concluded that "[a]lthough the district court could have explicitly addressed the groupability issue, it was not required to do so." 617 F.3d 1017, 1029 (8th Cir. 2010). In *Dvorak*, groupability was a marginal factor, as the case involved numerous victims, and of eleven § 1028A counts on which the defendant was convicted, only two sentences ran consecutively. *Id*. at 1020–21. Thus, given this context, it was sufficient for the district court to have mentioned § 5G1.2 without listing each factor. *Id*. at 1029; *see also United States v. Corbin*, 474 F. App'x 66, 69 (3d Cir. 2012) (affirming consecutive sentences based on multiple victims); *United States v. Bradshaw*, 445 F. App'x 176, 180–81 (11th Cir. 2011) (same); *United States v. Collins*, 640 F.3d 265, 270 (7th Cir. 2011) (two consecutive sentences affirmed, out of eleven victims); *United States v. Egu*, 379 F. App'x 605, 608 (9th Cir. 2010) (holding that the "number of victims[] provide[s] a rational and objective basis for imposing consecutive § 1028A sentences, particularly where § 1028A does not itself provide for incremental punishment in cases involving multiple victims"); *United States v. Godwin*, 242 F. App'x 898, 900 (4th Cir. 2007) (vacating a sentence for failure to consider groupability). Here the court should have addressed groupability because the PSR grouped two of the underlying offenses, and the court accepted that grouping.

district court accepted that recommendation. This was sensible. Both of those crimes involved Chibuko impersonating the same individual on a job application. Since this grouping was permissible, and the district court adopted it, the court was required to explain its departure from the "general[]" rule that the § 1028A sentences should run concurrently when the underlying crimes were grouped. *See* Guidelines § 5G1.2 Application Note 2(B)(ii). Since it did not, we remand for it to do so, as discussed in our Conclusion *infra*.

We do not hold, however, that the district court was compelled to run the sentences for counts four and nine concurrently. Even though the crimes underlying those counts were groupable, it remained within the district court's discretion to determine whether the "general[]" rule should not apply based either on a factor spelled out in Application Note 2(B) or, given the expressly non-exhaustive nature of Note 2(B), some other factor. The record does not make clear, however, whether the district court considered the relevant guidelines before deciding to run the sentences consecutively. The lack of any reference to § 5G1.2, to the groupability of the offenses underlying the § 1028A crimes in this context, or to the general rule stated in Application Note 2(B)(ii), may indicate that the court did not comply with the requirement in 18 U.S.C. § 1028A(b)(4) to

12

consult the applicable guidelines in deciding between concurrent and consecutive sentences on those counts. Accordingly, we remand to the district court for further proceedings in connection with the sentences on counts four and nine, as detailed *infra* in our Conclusion.

2. The Voter Fraud

Although we remand with respect to Chibuko's sentences for counts four and nine, we find no plain error with respect to the court's decision to run the sentence for count six, Chibuko's other § 1028A conviction, consecutively to all other sentences. The offense underlying count six was count five, Chibuko's false claim of citizenship on a voter-registration application in Buckley's name. This was clearly not groupable with the offenses underlying Chibuko's other § 1028A convictions. Although the PSR recommended that the employment-related frauds be grouped together, it placed voter-registration fraud in a different group. Chibuko, who submitted to the district court a sentencing memorandum containing his own "proposal as to what his Guidelines range should be," likewise placed count five in a group different from the employment-fraud counts. Def.'s Mem. in Aid of Sentencing at 6--8. The district court properly

13

accepted these groupings. Sentencing Transcript ("S.Tr.") 37.[4]  Given the disparate

harms caused by the crimes charged in count five (voter fraud) and counts three

and eight (employment fraud) and Chibuko's concession that those crimes which

underlay the § 1028A offenses should not be grouped, we find no plain error in

the district court's failure to explicitly consider whether the groupability of the

crimes favored running Chibuko's sentence for count six concurrently with his

other § 1028A sentences.[5]

---

[4]The court is not, of course, required to accept a party's concession on an issue such as groupability under the Guidelines; but we see no error in the court's acceptance of the position of Chibuko and the PSR that the voter-registration fraud should not be grouped with the employment frauds, given that § 3D1.2 "does not authorize the grouping of offenses that *cannot be considered to represent essentially one composite harm* . . . ."  Guidelines § 3D1.2 Application Note 4 (emphasis added).  The harm from the voter-registration fraud, which concerned the right to vote, cannot be considered part of the same harm as the harms potentially resulting from the employment-application frauds, which include not only impairment of the victim's ability to obtain his own employment, but also exposure to tax liability, including penalties and interest, for underreporting the income earned in positions held in the victim's name.  Here, for example, the district court noted a "vast difference between the income which [Chibuko's] employers reported paying him and the income which Mr. Chibuko claimed to the Internal Revenue Service on his income taxes."  S.Tr. 40.

[5]For essentially these same reasons, we reject Chibuko's argument that it was substantively unreasonable for the court to run his sentences consecutively, or that his sentence was otherwise substantively unreasonable.

14

B. Other Sentencing Challenges

In addition to his objection to his § 1028A sentences, Chibuko argues that the district court failed to properly consider or address his objections to the final version of his PSR. As discussed below, Chibuko did not raise any meaningful objections to his PSR in the district court. Accordingly, we review the newly alleged deficiencies only for plain error and conclude that none of Chibuko's challenges meet that standard.

1. Partially Superseded PSR

Chibuko's PSR was issued in early August 2011. Group one on the PSR (counts two, three, seven and eight) included enhancements for (i) monetary value of the harm, § 2B1.1(b)(1)(H); (ii) use of a means of an identification to obtain another means of identification, § 2B1.1(b)(11)(C)(i); and (iii) a vulnerable victim, § 3A1.1(b)(1). Group two (counts one and five) included an enhancement for fraudulently using a U.S. passport, § 2L2.2(b)(3).

Only a few days before sentencing, however, the Probation Office issued a so-called "Second Addendum" to the original PSR. The addendum dropped the § 2B1.1(b)(11)(C)(i) using-an-identity-to-get-an-identity enhancement from group one, because one of the counts in group one, Chibuko's 2008 fraudulent voter

15

registration, was already the basis of a § 1028A conviction. The Guidelines note that a § 1028A conviction already accounts for the aggravating factor that § 2B1.1(b)(11)(C)(i) seeks to punish, and therefore the enhancement is inapplicable. Guidelines § 2B1.6, Application Note 2. The new PSR also added three enhancements to group one: (i) abusing a position of trust, § 3B1.3; (ii) relocating to evade arrest, § 2B1.1(b)(10); and (iii) obstructing the sentencing investigation, § 3C1.1.

Chibuko now argues that the district court sentenced him on the basis of the first, admittedly erroneous, PSR, without considering the corrections in the Second Addendum. Taken as a whole, the record does not support Chibuko's contention. To begin with, the court accepted the offense level calculated in the final version of the PSR, which differed from that in the prior PSR. Moreover, at

the sentencing hearing the court referred to the Second Addendum at least a half-

dozen times.[6]

Chibuko also asserts that since the court referred to the fact that he had

"repeatedly" used Buckley's identity to obtain other fraudulent identifications, it

was improperly applying Guidelines § 2B1.1(b)(11)(C)(i) against him.  S.Tr. 36.

Although § 2B1.1(b)(11)(C)(i) is admittedly inapplicable in Chibuko's case, the

Second Addendum to his PSR withdrew this sentencing adjustment and we do

not take the court to have erroneously applied it.  The court never referred to

§ 2B1.1(b)(11)(C)(i) in arriving at Chibuko's sentence, and the final offense level

calculation made by the court was consistent with the Second Addendum, which

did not include an adjustment pursuant to § 2B1.1(b)(11)(C)(i).  It was entirely

permissible for the court to mention Chibuko's repeated use of Buckley's identity

to obtain other means of identification because this was clearly relevant to the

---

[6]*See* S.Tr. 4 ("[T]he Probation Office filed a second addendum on December 16, 2011."); *id*. at 5 ("The Court has reviewed . . . both addenda . . . ."); *id*. at 42 ("Mr. Chibuko, have you been provided a copy of the pre-sentence investigation report including the two addenda?"); *id*. at 43 ("[T]he second was filed on the 16th of December and it is titled Second Addendum . . . ."); *id*. at 44 ("So Mr. Chibuko, is it true that you read the . . . second addenda to the pre-sentence investigation report?"); *id*. at 45 ("the pre-sentence investigation report as amended by the addenda").

17

court's assessment – required by 18 U.S.C. § 3553(a)(2)(A) – of, *inter alia*, the seriousness of Chibuko's offenses.

## 2. Required Findings of Fact

We are also unpersuaded that the court failed to make any required findings with respect to Chibuko's disagreements with the adjustments recommended in the Second Addendum. As to the adjustments for abuse of trust and use of sophisticated means, the record does not indicate that Chibuko made any objections that required rulings. Eight days before the December 20, 2011 hearing, Chibuko filed his December Sentencing Memorandum; it did not mention any of the newly recommended adjustments. Chibuko's appellate attorney points out that the memorandum was filed on December 12 and that the Second Addendum to the PSR was dated December 16. But he does not state that trial counsel had no advance notice of the additional recommendations from the Second Addendum; the record does not indicate that any written objections were filed after the Second Addendum was filed; and at the sentencing hearing, Chibuko's trial counsel said that most of what he wanted to bring to the court's attention was "contained within my memorandum." S.Tr. 27--28. After making arguments to the district court with respect to loss amounts and the proper scope

of relevant conduct, counsel mentioned the three new adjustments. *See id.* at 28--30.  But as to sophisticated means and abuse of trust, all he said was that "there's essentially an objection to remain consistent with the defense at trial."  *Id.* at 30.  The defense at trial was that Chibuko was Buckley.  It was not error, much less plain error, for the court not to address this "objection."

As to the recommended obstruction-of-justice adjustment, the Second Addendum stated that Chibuko, in his post-trial interviews with the Probation Department, had continued to maintain that he is Steven Buckley, *i.e.*, the victim of his identity thefts, and that this lie was material to the pre-sentence investigation and to sentencing.[7]  All defense counsel said with respect to the recommended obstruction adjustment was that his client, "in providing answers to" the probation officer, did "not hesitate," and that "[t]his was the information that he [*i.e.* Chibuko] wanted to present."  S.Tr. 30.  This cannot be considered an objection to the obstruction adjustment requiring a response from the court.

_____

[7]*See* Guidelines § 3C1.1 & Application Note 4(H) (providing for a two-step increase in offense level if the defendant, *inter alia*, "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to . . . sentencing of the instant offense of conviction," by "providing materially false information to a probation officer in respect to a presentence . . . investigation for the court").

19

It is true that in order to apply § 3C1.1, the district court was required to make a finding that the defendant had the specific intent to obstruct justice, *i.e.*, that he knowingly lied with the purpose of obstructing the pre-sentence investigation. *See United States v. Reed*, 49 F.3d 895, 900 (2d Cir. 1995). It is also true that the district court did not explicitly make such a finding, and that some of the court's statements may seem inconsistent with a finding of a specific intent to obstruct justice. For example, the court said: "I really lack the expertise to diagnose Mr. Chibuko. *I really don't know why* he persists in these untruths." S.Tr. 56 (emphasis added).

Nonetheless, viewing the record as a whole we do not think this amounted to plain error. Elsewhere the court called Chibuko's claim to be Buckley "specious," suggesting that the claim was a knowing lie. S.Tr. 40. Moreover, a specific intent to lie was an element of the crimes of which Chibuko had just been convicted. *See, e.g.,* 18 U.S.C. § 1542 ("Whoever *willfully* and *knowingly* makes any false statement in an application for passport . . . ." (emphasis added)). We see no plausible basis for any contention that Chibuko's post-trial claims to be Buckley were any less knowing than his assertions before trial. We thus cannot conclude that the lack of a more detailed finding of specific intent constituted plain error.

20

## Conclusion

We have considered all of Chibuko's arguments, both counseled and *pro se*, and except as indicated above, find them to be without merit. We therefore **AFFIRM,** in part. Because the district court inadequately explained its decision to group counts three and eight, but not run counts four and nine concurrently, we **REMAND**, in part, for supplementation of the record with appropriate findings and explanations, or alternatively, for re-sentencing. If the court considered Guidelines § 5G1.2 Application Note 2(B)(ii) and the groupability of the offenses underlying those § 1028A counts, it should supplement the record with appropriate factual findings and an explanation of its decision.

If the court did not consider Guidelines § 5G1.2 Application Note 2(B)(ii), it should do so. If it concludes that a consecutive sentence is appropriate, it should supplement the record with its findings and explanations in support of that conclusion. If it concludes that the prison terms on those two counts should be concurrent with each other, it should re-sentence Chibuko.

The mandate shall issue forthwith. If the district court supplements the record in accordance with the foregoing, this appeal will be reinstated – without the need for a new notice of appeal – upon notice by either party to this Court by

letter within 14 days of such supplementation.  If the district court re-sentences

Chibuko, any party wishing to appeal must file a new notice of appeal.  In either

event, the matter shall be referred to this panel.