**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4462

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CLARENCE BOBBY ABBOTT,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Malcolm J. Howard, Senior District Judge. (5:05-cr-00092-H)

Argued: February 1, 2007          Decided: March 8, 2007

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jennifer Haynes Rose, Raleigh, North Carolina, for Appellant. Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Clarence B. Abbott pleaded guilty to violating 18 U.S.C.A. § 876 (West 2006), the district court imposed an enhanced sentence of sixty months imprisonment. On appeal, Abbott challenges his sentence on several grounds. Principally, he argues that the district court erred in applying a six-level enhancement for his victim's official status and in departing upward on the ground that criminal history category VI under-represented the seriousness of his prior crimes. For the reasons discussed below, we affirm.

I.

In November of 2002, while an inmate at Caledonia Correctional Institution in North Carolina, Abbott mailed a hand-written letter to Elaine Marshall, the North Carolina Secretary of State. In the letter, Abbott threatened to "blow [Secretary Marshall's] damn head off" and explicitly described how he would rape her and her children. Abbott also wrote that Secretary Marshall "[didn't] deserve to uphold [sic] [her] office" and noted that although Secretary Marshall was "supposed to be the secretary of state," she didn't "do anything to help Theodis Beck [who is the Secretary for the Department of Correction] with the prison overpopulation."

Abbott signed the letter with the name and identification number of another inmate at Caledonia Correctional Institution.

Investigators matched Abbott's handwriting and identified him as the author of the letter; Abbott then confessed to sending the letter in order to get the other inmate in trouble.

The Government charged Abbott with knowingly causing the United States Postal Service to deliver a communication containing a threat to injure the person of another, in violation of 18 U.S.C.A. § 876 (West 2006).  Abbott pleaded guilty without benefit of a plea agreement.

A probation officer prepared a pre-sentence report (PSR).  The officer assigned Abbott a base offense level of 12, pursuant to U.S.S.G. § 2A6.1 (2004).  The PSR added a 6-level enhancement because the victim was a public official and the offense was motivated by the victim's official status.  See id. § 3A1.2(b).  The probation officer then subtracted three levels for Abbott's acceptance of responsibility.  The total offense level was 15.

The officer also calculated Abbott's criminal history, assigning 21 criminal history points to Abbott because of his past offenses and the timing of the instant offense.  This total placed Abbott in criminal history category VI, the highest category.  Based on Abbott's criminal history category and offense level, the Guidelines range was 41 - 51 months.

The PSR also noted that "the court may wish to consider an upward departure . . . based on [Abbott's] criminal history category under-representing the seriousness of [his] criminal

history." The report then admonished counsel to prepare to address any potential departure issues at the sentencing hearing.

At sentencing, after hearing from the parties and Secretary Marshall, the court departed upward sua sponte. Referring to § 4A1.3 of the Guidelines, the court found that Category VI "[did] not reflect [Abbott's] true criminal history category" and raised Abbott's offense level from 15 to 17. This upward departure increased Abbott's advisory Guidelines range from 41 - 51 months to 51 - 63 months. The district court then sentenced Abbott to 60 months imprisonment (the statutory maximum), three years of supervised release, and a $2,500 fine.

II.

Abbott argues that the district court erred in applying the six-level enhancement based on Secretary Marshall's official status. He also asserts that the district court violated the Federal Rules of Criminal Procedure by failing to inform him of its intent to depart upward. Additionally, he claims that the

departure itself was unwarranted.[1]   We consider each of these contentions in turn.

                                    A.

Abbott challenges the district court's application of U.S.S.G. § 3A1.2(b), which authorizes a six-level enhancement for certain offenses against government officials, when "the offense of conviction was motivated by [the victim's official] status." U.S.S.G. § 3A1.2 (2004).   Abbott concedes that his victim was a government official and that his offense is eligible for the enhancement, but contests the court's finding that he was motivated by his victim's official status.   We review the sentencing court's factual findings for clear error.   United States v. Green, 436 F.3d 449, 456 (4th Cir. 2006).

Abbott argues that he was not motivated by Secretary Marshall's official status because in sending the letter he only intended to get the other inmate in trouble.   Abbott misunderstands

---

[1]Abbott raises two additional arguments that do not merit extended discussion.   First, he suggests that the judicial fact-finding underpinning the enhancement violated Blakely v. Washington, 542 U.S. 296 (2004).   This claim fails because the court sentenced Abbott after United States v. Booker, 543 U.S. 220 (2005), held the Guidelines advisory; thus there is no Sixth Amendment problem.   Second, Abbott asserts that he suffered "extreme prejudice" because the district court was "undu[ly] influence[d]" by the victim's identity and her "eloquent statements during [her] oratory."   Brief of Appellant at 23-24.   Abbott does not cite any evidence to support this claim; accordingly, we reject it.

the meaning of "motivate" as used in § 3A1.2. For a crime against an official to be "motivated" by the official's status, harming the official because of that status need not be the offender's sole or even primary objective. See Cirilo-Munoz v. United States, 404 F.3d 527, 531 n.5 (1st Cir. 2005). A person who kidnaps and ransoms an official cannot avoid the enhancement by claiming that he only did it for the money. All that § 3A1.2 requires is that the offender targeted the victim because of the victim's official status. See United States v. Garcia, 34 F.3d 6, 8-9, 13 (1st Cir. 1994) (holding crime motivated by police officer's status when defendant tried to run over officer in order to escape arrest).

In this case, Abbott sent Secretary Marshall the letter because she was the North Carolina Secretary of State. Abbott identified Secretary Marshall by her title and referred to her public responsibilities. See J.A. 31 ("[Y]ou [are] supposed to be the secretary of state, and you don't do anything to help Theodis Beck with the prison overpopulation."). Further, Secretary Marshall's status was critical to Abbott's plan -- a letter to a prominent official was more likely to trigger an investigation that would make trouble for the other inmate. The district court did not clearly err in finding that Abbott's offense was "motivated by" Secretary Marshall's official status.

Abbott next asserts that the district court violated Rule 32(h) of the Federal Rules of Criminal Procedure by failing to notify him of its intent to depart upward pursuant to § 4A1.3 of the Guidelines. We review for plain error because Abbott did not raise this objection before the district court. See United States v. Bellamy, 264 F.3d 448, 455 (4th Cir. 2001) (applying plain error analysis to claim of lack of notice of grounds for upward departure); United States v. Spring, 305 F.3d 276, 281 (4th Cir. 2002) (same). Under the plain error standard, we reverse only if (1) there is error, (2) that is plain, (3) that "affects substantial rights," and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 421, 467 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

Rule 32(h) provides that "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure . . . in the presentence report . . . the court must give the parties reasonable notice that it is contemplating such a departure." Fed. R. Crim. Pro. 32(h) (emphasis added). In this case, the district court departed upward pursuant to § 4A1.3 because it found that Abbott's criminal history category under-represented his true criminal history. The court did not violate Rule 32(h) because the PSR identified the very ground for departure

upon which the court relied: "Based on the findings of the presentence report, the court may wish to consider an upward departure from the applicable criminal history category, pursuant to 4A1.3 (Adequacy of Criminal History), based on [Abbott's] criminal history category under-representing the seriousness of the defendant's criminal history."

Abbott complains that if he had received more notice, his attorney would have had "adequate time" to investigate Abbott's criminal history and mental health record. Brief of Appellant at 12. However, Abbott's counsel could have investigated such matters between receipt of the PSR and the sentencing hearing. Abbott received all the notice required by Rule 32(h). Thus, the district court did not err, let alone plainly err, in failing to comply with Rule 32(h).[2]

---

[2]Although not mentioned in his brief, at oral argument Abbott seemed to suggest that the district court might have violated Rule 32(I). That rule requires sentencing judges to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. Pro. 32(i)(1)(C) (2006). We have recognized that the opportunity to comment may be effectively denied if a court does not prompt counsel to address a potential ground for departure identified in the PSR, then departs upward on that ground, and never affords counsel an opportunity to address the considerations that motivated its departure. Spring, 305 F.3d at 279-80, 282 (interpreting a predecessor to Rule 32(i)(1)(C)). In this case, however, the district court clearly afforded Abbott an adequate opportunity to comment. During the sentencing hearing, the court summarized Abbott's extensive criminal history and then asked Abbott's counsel, "What should I do and why[?]" Further, after announcing the upward departure and sentence, the court solicited further comment from Abbott's counsel. Abbott took this opportunity to correct the court's announcement of a sentence above the statutory maximum, but did not argue that an upward departure was

C.

Finally, Abbott challenges the upward departure itself. After Booker, "[w]hen we review a sentence outside the advisory guideline range-whether as a product of a departure or a variance-we consider whether the district court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the guideline range." United States v. Perez-Pena, 453 F.3d 236, 241 (4th Cir. 2006) (citing United States v. Moreland, 437 F.3d 424, 433-34 (4th Cir 2006); United States v. Hairston, 96 F.3d 102, 106 (4th Cir. 1996)).

Under the Guidelines, an upward departure "may be warranted" if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1) (2004). A departure from criminal history category VI may be appropriate "[i]n the case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history." Id. application note 2(B).

The question here is whether the district court was reasonable in concluding that Category VI substantially under-represented the

---

inappropriate. Having been given two chances to address how his criminal history should affect his sentence, Abbott cannot prevail on a claim that the court violated Rule 32(i) by denying him an opportunity to comment.

"seriousness" of Abbott's criminal history. Clearly, Category VI does not fully reflect the number of crimes in Abbott's past. He had 21 criminal history points, 8 more than the 13 required for Category VI. See U.S.S.G. ch. 5, pt. A (2004). Consequently, almost forty percent of Abbott's criminal history points are not accounted for by his Category VI placement. Further, the PSR did not assign Abbott any criminal history points for some of the sentences resulting from his 34 convictions, either because of their age or because they were related to sentences for which he did receive criminal history points.

Moreover, Abbott has received two sentences "of substantially more than one year [that were] imposed as a result of independent crimes committed on different occasions." U.S.S.G. § 4A1.3(a)(2)(B) (2004). The Guidelines suggest that such sentences may be reliable evidence that Category VI under-represents the seriousness of a defendant's history. Id. This under-representation occurs because the Guidelines assign the same number of points to all sentences of over a year, regardless of how long they are or how many convictions they punish. See U.S.S.G. § 4A1.1 (2004).

Furthermore, many of Abbott's crimes are serious. He has 16 felony convictions for breaking and entering, 4 for larceny, and 7 for breaking, entering, and larceny. Although Abbott attempts to minimize these crimes by characterizing them as "non-violent,"

Brief of Appellant at 16, the offenses involve significant harm to property and substantial risk of personal injury to others.  In addition, while in prison Abbott has been disciplined for sending a graphic threatening letter, threatening a staff member (3 times), assaulting a staff member (3 times), and damage to state property (2 times).  The letter Abbott sent to Secretary Marshall seems part of this pattern of threatening conduct.

In light of the nature and extent of Abbott's history, the sentencing court's decision to impose an upward departure was reasonable, and the extent of the upward departure, which led to a sentence only nine months longer the top of the original Guidelines range, was similarly reasonable.


III.

For all the reasons set forth within, the judgment of the district court is

AFFIRMED.