RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 18-5978

*v.*

SCOTT W. SULIK,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:18-cr-00019-1—Danny C. Reeves, District Judge.

Decided and Filed: July 3, 2019

Before: BOGGS, MOORE, and STRANCH, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Charles P. Wisdom, Jr., Andrew T. Boone, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

---

## OPINION

---

JANE B. STRANCH, Circuit Judge. Scott Sulik pleaded guilty to cyberstalking after he sent threatening emails to a member of the United States Congress. The only question his appeal presents is whether his crime was motivated by the victim's status as a government officer, thereby triggering a six-level enhancement under United States Sentencing Guideline (USSG) § 3A1.2. Because the district court did not clearly err in concluding that it was, we **AFFIRM**.

In September 2017, a member of the House of Representatives made a public statement calling General John Kelly, then serving as White House Chief of Staff, a "disgrace to the uniform he used to wear." The statement was made in the context of an ongoing debate about federal immigration policy. In national news coverage of the interaction, the Representative highlighted what he considered General Kelly's unprincipled stance regarding the "dreamers," immigrants brought to this country as children. Media commentators pointed out that the Representative had never served in the military, while General Kelly had both served and lost a son in Afghanistan.

When Sulik learned about the comment, he sent the Representative a series of threatening emails. He wrote, for example, "You put your family at risk," "Marines are loyal to their Generals, not low life parasite politicians like you," and "What are you going to do before I erase you?" He later admitted that he intended to harass and intimidate the Representative and pleaded guilty to one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2).

In the plea agreement, Sulik reserved the right to object to a proposed six-level enhancement for a crime "motivated by" the victim's status as a government officer. *See* USSG § 3A1.2(a)–(b). At sentencing, he did so, arguing that he was "a former Marine . . . outraged about a statement about a former Marine who had lost a son," and that it did not matter "who had made the statement." During his allocution, Sulik explained that he "would die for [his] country and for any fellow Marine." He added:

> I'm regretful of the whole situation that—you know, Kelly lost his son, and I always say a prayer for any fallen soldiers, and I take it to heart. And I'm disappointed that there are people in government who don't feel the same way I do when they're laying their lives on the line, or they lose a son or daughter. And I don't mean that in a political way. I'd be willing to take a polygraph test, and it wasn't political.

(R. 38, Sentencing Tr., PageID 159) The district court deemed the Government's proof with regard to the enhancement "barely sufficient" but ultimately overruled Sulik's objection. With a resulting base offense level of 23 and the lowest criminal history category, Sulik's advisory Guidelines range was 46 to 57 months of imprisonment. The district court imposed a sentence of 48 months. Without the six-level enhancement, Sulik's range would have been 24 to 30 months.

The only issue on appeal is whether imposition of the enhancement was warranted. The so-called "official victim" enhancement applies if (1) the victim is a current or former "government officer or employee," or an immediate family member, and (2) "the offense of conviction was motivated by such status." USSG § 3A1.2(a). There is no dispute that the recipient of Sulik's emails, a member of the House of Representatives, qualifies as a government officer; the question is why Sulik sent his emails. Motivation is ultimately a question of fact. *See Hoard v. Sizemore*, 198 F.3d 205, 218 (6th Cir. 1999) (rejecting, in the context of a § 1983 suit, "an attempt to transform the factual issue of motivation into the legal question of objective reasonableness"); *see also United States v. Hoff*, 767 F. App'x 614, 624 (6th Cir. 2019). We therefore review the district court's factual determination that Sulik was motivated by the Representative's official status for clear error and any legal conclusions regarding the Guidelines de novo. *See United States v. Susany*, 893 F.3d 364, 366–67 (6th Cir. 2018).

We have previously explained that the victim's official status need not be the sole motivation for the offense. *See United States v. Hopper*, 436 F. App'x 414, 429 (6th Cir. 2011) (citing *United States v. Abbott*, 221 F. App'x 186, 189 (4th Cir. 2007)). As the Fourth Circuit put it, "[a] person who kidnaps and ransoms an official cannot avoid the enhancement by claiming that he only did it for the money." *Abbott*, 221 F. App'x at 189. Thus, we rejected a defendant's argument that he solicited a friend to kill an FBI agent who was to testify against the defendant because he sought "to eliminate witnesses in general." *United States v. Talley*, 164 F.3d 989, 1003 (6th Cir. 1999). Although we credit Sulik's statement that he was motivated by the content of the Representative's statements, it remains our task to determine if the Representative's status was *also* a motivating factor.

The Government urges that we could find this requirement satisfied solely on the basis that Sulik knew that the recipient of his threatening emails was a government official. In one unpublished case, we hinted that such knowledge "may be sufficient" to trigger the official victim enhancement. *See Hopper*, 436 F. App'x at 429. But we stopped short of accepting that proposition as a matter of law and went on to analyze other evidence concerning the defendant's motivation. *See id*. Accepting the sufficiency of mere knowledge would lead to improper results. By this logic, if a Senator's husband kills her because—and only because—she filed for

divorce, the official victim enhancement would still apply; the law would ascribe motivation based merely on the husband's knowledge of his wife's election to Congress. That standard would sweep far too broadly.

An example included in the commentary to this guideline confirms our conclusion. The notes describe a situation "where both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute." USSG § 3A1.2, comment. (n.3). In this example, the defendant is necessarily aware of the victim's official status—they share the same status—and yet the commentary instructs that the enhancement does not apply. *See id.* We are not at liberty to disregard this "authoritative" interpretation "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Havis*, No. 17-5772, --- F.3d ---, 2019 WL 2376070, at *3 (6th Cir. June 6, 2019) (en banc) (per curiam). The Government has not identified any basis upon which to make such a finding, and we see none. Thus, although a defendant's knowledge of the victim's official status is relevant to the § 3A1.2 calculus, and presumably necessary for its application, knowledge alone cannot trigger the enhancement.

Sulik's knowledge of the Representative's status is therefore properly considered alongside other evidence shedding light on his motivation. The comment that triggered Sulik's threatening emails was made to the public in response to ongoing debate about a matter of great political significance: this country's immigration policy. Sulik learned of the comment only because national media discussed it as a matter of public (and political) concern. In at least one email, Sulik referenced the Representative's official status, writing, "Marines are loyal to their Generals, not low life parasite politicians like you." And during the sentencing hearing, Sulik's attorney acknowledged that the threats were sent "to a campaign email, not a personal address."

Our analysis in *United States v. Talley*, where we rejected the defendant's argument that he sought to have an FBI agent killed because he was a witness, not because he was an official, is instructive. *See* 164 F.3d at 1003–04. There, we deemed it significant that the defendant referred to his victim as a "fed," *id.* at 1004; here, Sulik referred to his victim as a "politician." In *Talley*, we noted that "the very reason that [the victim] was a witness was *because* of his

official status as an FBI agent investigating Talley's case," *id.*; here, the reason the Representative commented about General Kelly's military career was because of his position as an elected official. That official status was also the reason the comment was of public interest and so the reason Sulik learned of the comment.

The *Talley* court, however, did not rest its conclusion entirely on those two pieces of evidence. Indeed, the defendant in *Talley* had been convicted of "solicitation to kill an FBI agent in violation of 18 U.S.C. § 1114, and the jury instructions required that the government prove that Talley did so while the agent was engaged in or on account of the performance of his official duties." *Id.* No analogous evidence is present here. Nor has the Government shown, as we have found persuasive elsewhere, that Sulik's "intention was to spur official action," *United States v. Manns*, 690 F. App'x 347, 352 (6th Cir. 2017), or that Sulik connected his threats to "vote[s] on pending legislation," *Hoff*, 767 F. App'x at 624.

The district court's recognition that the evidence presented here is "barely sufficient" to support application of the enhancement is accurate. But even if another judge might reasonably have reached a different result on these facts, our review is confined to determining whether the district court clearly erred. *See Susany*, 893 F.3d at 366–67. We find no clear error.

We therefore **AFFIRM** the decision of the district court.