NOT RECOMMENDED FOR PUBLICATON
File Name: 20a0185n.06

No. 19-5583

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 31, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,  )
  )
    Plaintiff-Appellee,  )
  )
  )    ON APPEAL FROM THE UNITED
v.  )    STATES DISTRICT COURT FOR
  )    THE EASTERN DISTRICT OF
SCOTT W. SULIK,  )    KENTUCKY
  )
    Defendant-Appellant.  )
  )

BEFORE: STRANCH, READLER, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. After a member of Congress disparaged then-White House Chief of Staff John Kelly, someone started sending emails to this Representative saying things like "You put your family at risk" and "What are you going to do before I erase you?" *See United States v. Sulik*, 929 F.3d 335, 336 (6th Cir. 2019). These threatening emails drew the attention of the United States Capitol Police. Their investigation led them to Scott Sulik in Versailles, Kentucky. After searching Sulik's home, laptops, and cellphones, they discovered items they were expecting (the emails) and items they were not (child pornography).

A grand jury handed down two indictments against Sulik. The first gave rise to a cyberstalking case. It charged Sulik with sending threatening emails in violation of 18 U.S.C. § 2261A(2). Sulik pleaded guilty to that offense, and we have since affirmed the district court's 48-month sentence. *Sulik*, 929 F.3d at 338. That case is now final.

The second indictment gave rise to this child-pornography case. It charged Sulik with possessing pictures of children engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Sulik stood trial; a jury found him guilty. The district court sentenced him to 57 months' imprisonment, and ordered this sentence to run consecutive to the 48-month cyberstalking sentence. The court also imposed a 15-year term of supervised release requiring Sulik to submit to suspicionless searches. On appeal, Sulik challenges his 57-month sentence and the suspicion-less-search condition of his supervised release. We reject both arguments and affirm.

1. *57-Month Sentence*. Sulik contends that his 57-month sentence is substantively unrea-sonable because it runs consecutive to the 48-month sentence imposed in his cyberstalking case. If the two offenses had been charged in one indictment, Sulik contends, their joinder would have produced a single guidelines range for both convictions much lower than his 105 months of total imprisonment. This claim has two basic flaws.

Flaw One: While Sulik couches his argument in the language of *substantive* reasonable-ness, he primarily asserts a *procedural* attack. He suggests that the district court should have used the Sentencing Guidelines' "grouping rules" to come up with a single guidelines range for both offenses. *See* U.S.S.G. §§ 3D1.1–3D1.5 (2018). But any process-based claim that the district court committed a guidelines error falls squarely within the procedural-reasonableness camp. *See, e.g.*, *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). And because Sulik did not raise this guidelines argument in the district court, we must apply plain-error review when consid-ering it. *See United States v. Potts*, 947 F.3d 357, 364 (6th Cir. 2020).

Sulik fails to identify a clear and obvious error in the way in which the district court calcu-lated his guidelines range. *See id.* at 367. The Sentencing Guidelines' grouping rules apply in two situations: if a single indictment charges a defendant with multiple offenses, or if the multiple

2

counts are "contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding." U.S.S.G. § 3D1.1, n.1; *cf. United States v. Griggs*, 47 F.3d 827, 830–31 (6th Cir. 1995). Sulik was separately indicted for his cyberstalking and child-pornography offenses, and his sentences were not "imposed at the same time" or "in a consolidated proceeding." U.S.S.G. § 3D1.1, n.1; *cf. Green v. United States*, 65 F.3d 546, 548–49 (6th Cir. 1995). He cites no authority suggesting that these grouping rules extend across separate sentencings.

Sulik responds that the district court *should* have imposed his two sentences at the same time because the two offenses *should* have been charged in the same indictment. As support, he notes that Federal Rule of Criminal Procedure 8(a) says that an "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." But the Rule "is permissive; a prosecutor 'may' charge multiple counts and multiple defendants in one trial, but except in limited circumstances, is not required to do so." 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure: Criminal* § 142, Westlaw (database updated Feb. 2020). And Sulik did not even move to join his two cases in the district court. That is unsurprising. Defendants more frequently argue that prosecutors *mis*joined offenses because joinder "permit[s] the jury to hear evidence that would be inadmissible in separate trials" and "creat[es] a risk that the jury will use the evidence of separate crimes cumulatively." *Id.* § 144; *e.g.*, *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011); *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007). Nor does Sulik convince us that his cyberstalking and child-pornography cases meet Rule 8(a)'s criteria. While both charges arose from the same investigation and the offenses might have used the same devices, they are similar

only insofar as they involved the internet. Sending threats to a member of Congress has no relation to downloading child pornography. *See Locklear*, 631 F.3d at 368. So the Sentencing Guidelines' grouping rules did not plainly apply here.

Flaw Two: Apart from his mistaken guidelines claim, Sulik offers little explanation why his 57-month sentence is substantively unreasonable even considering that it runs consecutive to his 48-month cyberstalking sentence. A substantive-reasonableness claim is, in essence, a claim that a sentence is "too long" when assessed against the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018); *see United States v. Villa-Castaneda*, 755 F. App'x 511, 522–23 (6th Cir. 2018). Sulik, however, barely references those factors. And while he challenges the district court's decision to run his sentences consecutively, he does not even cite the standards for deciding whether to impose consecutive sentences. *See* 18 U.S.C. § 3584; U.S.S.G. § 5G1.3(d) & n.4(A); *see also Potts*, 947 F.3d at 369; *Villa-Castaneda*, 755 F. App'x at 522–23. Instead, Sulik simply asserts that his combined sentences are "far greater than necessary to achieve the statutory sentencing purposes."

His brief analysis falls short in showing that the district court abused its discretion in selecting the sentence. *Potts*, 947 F.3d at 371–72. The court reasonably weighed the § 3553(a) factors. It opted to impose the within-guidelines sentence of 57-months based on such things as "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Yet it also opined that this sentence would "not provide deterrence for this defendant" and expressed "concerns about protecting the public." So the court justified its decision to run this sentence consecutive to Sulik's cyberstalking sentence with those same concerns in mind. *See id.* § 3553(a)(2)(B)–(C). It did not abuse its discretion in doing so.

2. *Supervised-Release Condition*. Sulik argues that the Fourth Amendment prohibits the condition of supervised release requiring him "to submit his person, residence, office, vehicle, or any property under his control to a search conducted by the probation office" without reasonable suspicion of wrongdoing. But Sulik did not object to this suspicionless-search condition in the district court, so the parties agree that we again review this claim for plain error. *See United States v. Chase*, 740 F. App'x 833, 834 (6th Cir. 2018). Under that standard, the "lack of precedent" supporting Sulik dooms his Fourth Amendment claim. *United States v. Wesley*, 772 F. App'x 318, 320 (6th Cir. 2019) (citing *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015)).

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. Whether a search is "reasonable," the Supreme Court has said, often turns on a totality-of-the-circumstances balancing of the government's interest in ferreting out crime against the individual's interest in being left alone. *Samson v. California*, 547 U.S. 843, 848 (2006); *United States v. Knights*, 534 U.S. 112, 118–19 (2001). The Court has added that this balancing plays out differently for those who are on parole or probation as compared to those who have committed no crimes. *Samson*, 547 U.S. at 848–52; *Knights*, 534 U.S. at 119–21. While a search of a home usually requires a warrant backed by probable cause, *Knights* held that the Fourth Amendment required "no more than reasonable suspicion" to search a probationer's house when the probationer had agreed to a condition of probation that permitted suspicionless searches. 534 U.S. at 121. It left open whether the Fourth Amendment also would permit suspicionless searches of probationers. *Id.* at 120 n.6.

Later decisions have held that suspicionless-search conditions do not categorically offend the Fourth Amendment as applied to probationers, parolees, and those on supervised release. *See Samson*, 547 U.S. at 846; *United States v. Jackson*, 866 F.3d 982, 985 (8th Cir. 2017); *United*

*States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016). In *Samson*, the Supreme Court upheld the suspicionless search of a parolee conducted under a state law that required parolees to agree to those searches as a condition of parole. 547 U.S. at 850–56. It reasoned that "parolees have fewer expectations of privacy than probationers because parole is more akin to imprisonment than pro-bation is to imprisonment." *Id.* at 850. In *Tessier*, we upheld a suspicionless search of a proba-tioner under *Knights*'s totality-of-the-circumstances approach. 814 F.3d at 433. And at least one other circuit has extended *Knights*'s logic to this case's supervised-release context. *Jackson*, 866 F.3d at 985. It reasoned that those on supervised release have an even further reduced expectation of privacy because supervised release "is a more severe punishment than parole and probation[.]" *Id.* As other courts have recognized, the current legal landscape forecloses any claim that a suspi-cionless-search condition for individuals on supervised release "plainly" violates the Fourth Amendment. *See United States v. Oswald*, 711 F. App'x 593, 594–95 (11th Cir. 2018) (per cu-riam); *United States v. Erwin*, 675 F. App'x 471, 472–73 (5th Cir. 2017) (per curiam).

Sulik's cases do not convince us otherwise. He cites *United States v. Payne*, 181 F.3d 781 (6th Cir. 1999), which suggested that the Fourth Amendment required a search of a parolee to "meet the federal standard of reasonable suspicion." *Id.* at 788. Yet this statement from *Payne* predates the decisions in *Samson* and *Knights*. After those cases, we have held that the Fourth Amendment permits a suspicionless search even of a probationer when the search was predicated on an authorized condition. *Tessier*, 814 F.3d at 433. Regardless, the condition of parole in *Payne* did *not* permit suspicionless searches; it required officers to have reasonable suspicion before they could search the parolee's residence. *See* 181 F.3d at 783; *see also United States v. Hilton*, 625 F. App'x 754, 758 (6th Cir. 2015) (same). *Payne* did not address the question presented here: whether the Fourth Amendment prohibits suspicionless searches even when they *are* imposed as

6

a condition of release.  *See Tessier*, 814 F.3d at 434.  It thus does not show any plain error in the supervised-release condition in this case.

We affirm.