# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1307

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Ray Feeback

*Defendant - Appellant*

_____

No. 22-1308

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Ray Feeback

*Defendant - Appellant*

_____

No. 22-1309

_____

United States of America

*Plaintiff - Appellee*

v.

Travis Ray Feeback

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: September 23, 2022
Filed: November 28, 2022
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Travis Feeback received a 120-month prison sentence after he threatened to "kill some" government employees and assaulted two guards. Although he remains unhappy with the sentence, we affirm.

I.

Feeback's separation from the Iowa Army National Guard did not go smoothly. First, he failed to return some equipment, so the government "began to recoup" the $2,000 he owed. Despite his claim that he eventually returned the equipment, Feeback never got his money back. Second, he continues to believe that the government shortchanged him on certain "service[-]connected disability" and "medical military retirement" benefits.

Feeback decided to take matters into his own hands. He started by sending threatening emails to members of Iowa's National Guard, including one saying he

would "kill some people" unless he received "[his] $2,000 back" plus the benefits "[he] deserve[d]." Another demanded that they "figure . . . out" how to provide his money and benefits, or else he would come to the base and "pick[] [them] off." (Emphasis omitted).

He made similar threats against Veterans Affairs employees. One post on the agency's Facebook page said that they "had better be working on . . . getting [his]" benefits "[b]efore somebody comes in with body armor and a semi[-]automatic rifle and . . . shoots the place up." Other posts warned that he would "come make people bleed" unless he received his money.

These threats landed Feeback in jail, where he continued to lash out. One day, when he did not like the answer about some missing colored pencils and books, he punched a guard more than 20 times. When another guard refused to give him extra clothes a few months later, Feeback again reacted violently, this time by punching and trying to bite him.

These jailhouse disputes only deepened Feeback's legal troubles. In addition to facing two counts of sending interstate communications with the intent to extort, *see* 18 U.S.C. § 875(b), he now faced two more for assault inflicting bodily injury, *see* 18 U.S.C. § 111(a)–(b). Feeback pleaded guilty to all four counts.

At sentencing, the district court[1] gave him a three-level enhancement on the extortion counts because his threats were "motivated by the fact that [his] victim[s] [were] government officer[s] or employee[s]." U.S.S.G. § 3A1.2 cmt. n.3. Feeback also collected a six-level enhancement on the assault counts for putting the guards at "substantial risk of serious bodily injury." § 3A1.2(c). Although he requested a downward departure based on his mental-health problems, *see* U.S.S.G. § 5H1.3, the district court instead varied upward and sentenced him to 120 months in prison.

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

-3-

II.

According to Feeback, neither enhancement applies. "We review the district court's application or interpretation of the Guidelines de novo and its factual findings for clear error." *United States v. Nyah*, 35 F.4th 1100, 1109 (8th Cir. 2022) (citation omitted).

A.

There was no error, clear or otherwise, in the district court's conclusion that Feeback's extortion offenses were "motivated by the fact" that his victims were "government officer[s] or employee[s]." U.S.S.G. § 3A1.2 cmt. n.3; *see United States v. Drapeau*, 121 F.3d 344, 347 (8th Cir. 1997). Feeback admits that he threatened individuals who worked for the government, but argues that he was "motivated by" money. We must decide whether the enhancement still applies when more than one motive exists.

The text of the Sentencing Guidelines provides the answer. The key phrase is "motivated by," which carries its plain and ordinary meaning. *See United States v. Garcia-Juarez*, 421 F.3d 655, 659 (8th Cir. 2005). The definition of "motivate" is "[t]o provide with *an incentive* or *a reason* for doing something; impel." *The American Heritage Dictionary of the English Language* 1150 (5th ed. 2016) (emphasis added); *see Webster's Third New International Dictionary* 1475 (2002) (defining "motive" to include "the consideration or object *influencing a choice* or prompting an action" (emphasis added)). Here, Feeback had an obvious "incentive" or "reason" to target government employees: he believed they had the authority to return his money and award service-related benefits. *American Heritage Dictionary*, *supra*, at 1150. Their status as government employees, in other words, "influenc[ed] [his] choice" to engage in illegal behavior. *Webster's Third*, *supra*, at 1475.

Feeback basically said as much. He threatened National Guard personnel who failed to "pay any attention" to his requests. (Emphasis omitted). And then he

-4-

warned Veterans Affairs staff that they "had better get" him what he had "asked nicely for." Feeback's conduct, in other words, "derived directly from" the fact that his victims, as government employees, were in a position to give him what he wanted. *United States v. Hutterer*, 706 F.3d 921, 925 (8th Cir. 2013); *see United States v. Sealed Defendant One*, 49 F.4th 690, 698 (2d Cir. 2022) (concluding that there was no clear error when the defendant had threatened "government officers" who had "removed [him] from the government payroll").

It makes no difference that money may have played a role too. His theory, best we can tell, is that he would have lashed out against anyone who treated him that way, government official or not. But just because he may have taken similar actions against someone else does not mean that their status played no role. To the contrary, his victims were government employees, Feeback wanted them to take certain actions on his behalf, and their status influenced the choices he made. As long as official status was *one* motivation for the crime, the enhancement applies. *See United States v. Sulik*, 929 F.3d 335, 337 (6th Cir. 2019) (stating that "the victim's official status need not be the sole motivation for the offense").

B.

His conduct also "creat[ed] a substantial risk of serious bodily injury." U.S.S.G. § 3A1.2(c); *see United States v. Iron Cloud*, 75 F.3d 386, 389–91 (8th Cir. 1996) (applying clear-error review to this question). Over the span of just a few months, he brutally beat one guard by punching him more than 20 times, and then assaulted another by hitting him in the head, punching him, and trying to bite him. If just a single "blow to the head" can be enough, *United States v. Alexander*, 712 F.3d 977, 979 (7th Cir. 2013) (per curiam), then Feeback's violent and dangerous attacks on two guards surely posed a "substantial risk of serious bodily injury," § 3A1.2(c); *see United States v. Davidson*, 933 F.3d 912, 914–15 (8th Cir. 2019) (explaining that the defendant "created a substantial risk of serious bodily injury" under U.S.S.G. § 3C1.2 "[b]y struggling with the arresting officers").

III.

The district court's ultimate decision to sentence him to 120 months in prison passes muster too. Feeback, for his part, challenges both the refusal to grant a downward departure and the substantive reasonableness of the sentence. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (evaluating a sentence's reasonableness for an abuse of discretion).

The downward-departure argument is a nonstarter. Although Feeback's mental health was "relevant in determining whether a departure [wa]s warranted," U.S.S.G. § 5H1.3, the district court's decision not to grant him one is unreviewable absent an unconstitutional motive or a mistaken belief that it lacked the authority to depart, *see United States v. Dixon*, 650 F.3d 1080, 1084 (8th Cir. 2011). Neither exception is present here. *See id.*

Feeback's substantive-reasonableness challenge fares no better. The district court sufficiently considered the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), and "made 'an individualized assessment based on the facts presented,'" *United States v. Becerra*, 958 F.3d 725, 731 (8th Cir. 2020) (citation omitted). In varying upward, it recognized the need to account for the "stunning" damage Feeback had caused and the "significant danger" he posed in the future. *See* § 3553(a)(2)(A), (C). Just because Feeback wished the court would have placed even *greater* weight on his mental-health issues does not mean it abused its discretion. *See United States v. Vaca*, 38 F.4th 718, 724 (8th Cir. 2022).

IV.

We accordingly affirm the judgment of the district court.

_____