RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-1961

KAHWAHNAS NUCUMBHI POTTS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:18-cr-00012-1—Janet T. Neff, District Judge.

Argued: October 16, 2019

Decided and Filed: January 8, 2020

Before: BATCHELDER, DONALD, and READLER, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Blake P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for Appellant.
Ronald M. Stella, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for
Appellee. **ON BRIEF:** Blake P. Somers, BLAKE P. SOMERS LLC, Cincinnati, Ohio, for
Appellant. Ronald M. Stella, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids,
Michigan, for Appellee.

_____

## OPINION

_____

CHAD A. READLER, Circuit Judge. Kahwahnas Potts had a habit of breaking into
homes. But rather than stealing jewelry or money, Potts had a more intangible target: stealing

identities.  One of Potts's many identify-theft schemes was so intricate it required him to break into a victim's home not once or twice, but three times.

These brazen measures resulted in Potts's arrest and an ensuing plea of guilty to one count of unauthorized-access-device fraud and two counts of aggravated identity theft.  Although Potts had a long history of similar offenses, he had never received a sentence of more than two years' imprisonment.  This time would be different.

After reviewing Potts's criminal history, engaging with the parties' respective arguments at sentencing, and weighing the § 3553(a) factors, the district court sentenced Potts to nine years' imprisonment.  Potts claims that his sentence was both procedurally and substantively unreasonable.  We disagree and **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

Like many living in the upper Midwest, A.W. and S.W., a married couple from Grand Rapids, Michigan, spent parts of the fall and winter in Florida.  That meant that their home in Michigan sat empty for some time.  That was the case when, two days before Christmas, the couple's nephew discovered that A.W. and S.W.'s home had been burglarized.  Yet when the police arrived to investigate the break-in, the scene looked more like a Christmas miracle.  Despite evidence of a break-in, nothing in the home had been stolen.  Or so they thought.

In truth, the break-in was the third in a series of illegal entries by Kahwahnas Potts, all in pursuit of stealing the identities of A.W. and S.W.  Potts's first break-in took place a few days earlier, on December 19.  After breaking both a glass door and window to enter the home, Potts made his way to A.W.'s home office.  There, he found an Option1 Visa credit card not yet activated.  Using the home's phone, Potts called Option1 and activated the card.

Potts soon began to use the card to withdraw large sums of money.  That sudden activity, however, triggered a fraud alert on the card.  Representatives of Option1 left A.W. a message on his home phone attempting to alert him to the fraud.  Option1 also sent an email to an online profile believed to have been created by A.W.  But Potts, not A.W., had created that profile when the card was activated.  Pretending to be A.W., Potts responded to the email, questioned why the

card was put on hold, and requested that the hold be removed. To reactivate the card, however, Option1 required the cardholder—believed to be A.W.—to call Option1's customer service center to confirm there were no fraudulent charges on the account.

Potts would not be deterred. Returning to the scene of the crime, Potts broke into A.W.'s home once again, this time to listen to A.W.'s answering machine and to call customer service to impersonate A.W. and successfully "verify" aspects of the account. But two break-ins would not prove to be enough for Potts. So he broke into the house yet again. From this series of criminal acts, Potts had collected A.W.'s address, social security number, personal identification number, and other forms of identification. In his communications with Option1, Potts provided enough information to the company to persuade it that he was in fact A.W., and the company accordingly lifted the block on the Visa credit card.

By the time A.W. realized he was the victim of identity theft, Potts had already used the card to withdraw over $16,500.00. And in addition to the Option1 Visa, Potts had attempted to open and utilize twenty-six other credit card accounts as well as at least one Bank of America checking account, all under A.W.'s name. A.W.'s spouse, S.W., was also a victim. Using S.W.'s personal information, Potts attempted to open a CapitalOne Visa credit card and a bank account in S.W.'s name. And A.W. and S.W. were not the only victims of Potts's efforts to steal identities. Reflecting that fact, A.W. began receiving mail containing credit card statements in the names of several other victims.

Not knowing the identity of the culprit, the police began to investigate. To find the culprit, investigators first reviewed video recordings from the ATMs where Potts had withdrawn funds. These recordings proved inconclusive, however, as Potts wore a mask and drove a vehicle with a stolen license plate. So, the investigators turned to another digital medium, attempting to track the IP address used to open the credit cards. But once again, Potts had covered his tracks. In opening those cards, Potts utilized a phone issued in another's name and accessed wi-fi from services provided by local businesses.

Finally, a lead surfaced. Potts had also used the phone in question to call his ex-girlfriend. Investigators contacted Potts's ex-girlfriend and had her listen to recordings of Potts's calls to Option1. She confirmed that it was Potts's voice on the recordings.

In searching Potts's name in a law enforcement database, investigators learned that Potts previously used the address 2032 S. Division, Apartment 4, to submit fraudulent online credit card applications. While Potts no longer lived there, investigators still decided to visit the complex. During their visit, the investigators noticed the complex had only three units, but four mailboxes. In that fourth mailbox, investigators discovered numerous credit card applications and associated mail, including a credit card for S.W.

Investigators obtained a search warrant for Potts's current residence. Upon executing the search warrant, investigators identified the vehicles at Potts's home as those in the ATM video recordings. Officers also found several masks and gloves similar to those pictured in the videos. And they discovered information linking Potts to A.W. and S.W. as well as documents and credit cards in the names of several other individuals. Reflecting the elaborate nature of Potts's schemes, officers found a notebook containing the names, social security numbers, associated credit cards, and other personal identification information for eighty individuals, including A.W. and S.W.

Potts was charged in a nine-count criminal indictment for one count each of possession of stolen mail, unauthorized-access-device fraud and possession of fifteen or more unauthorized-access devices; and three counts each of unlawful uses of social security numbers and aggravated identity theft. He pleaded guilty to three counts: one count of unauthorized-access-device fraud and two counts of aggravated identity theft.

The probation office compiled Potts's presentence report, or "PSR," to which neither party objected. The PSR's calculation included a wrinkle of sorts, given the counts of conviction at issue. That is, unlike for most offenses, the length of the sentence to be imposed for aggravated identity theft is not subject to a Guidelines calculation. Instead, it carries a mandatory two-year sentence imposed by statute. *See* 18 U.S.C. § 1028A; U.S.S.G. § 2B1.6. When calculating the Guidelines range for multiple-count convictions that include aggravated

identity theft, a district court must remove all counts of aggravated identity theft from the Guidelines calculation, calculate the range for any remaining convictions, and then, later, impose a combined sentence for all counts, including aggravated identity theft. U.S.S.G. § 3D1.1. With respect to the remaining convictions, in Potts's case, that left only one additional crime, the underlying offense of unauthorized-access-device fraud. For that crime, Potts had a total offense level of 12.

After summarizing the charges in Potts's plea agreement and his related offense conduct, accepting Potts's plea agreement, and discussing the PSR with the parties, the district court took up calculating the sentencing range for the unauthorized-access-device-fraud offense. Given Potts's extensive criminal history, his criminal history category was VI, the highest category recognized by the Guidelines. In the fifteen years preceding his latest offenses, Potts had amassed five prior convictions with underlying conduct involving some manner of burglarizing homes, stealing personal information and documents, and/or committing aggravated identity theft. In one instance, Potts was sentenced by U.S. District Judge Janet T. Neff, the district judge in this case as well, to two years in prison for aggravated identity theft.

With an offense level of 12 and a criminal history category of VI, Potts's Guidelines range for unauthorized-access-device fraud was 30 to 37 months. The probation office, however, noted that the district court could depart upward from that range, on the basis that Potts's criminal-history category under-represented his criminal history. *See* U.S.S.G. § 4A1.3.

Based upon the PSR, the district court, prior to sentencing, issued a notice to the parties of its intent to exceed the Guidelines. At sentencing, the district court heard argument regarding the appropriate Guidelines range for Potts's unauthorized-access-device-fraud conviction. Following argument, the district court decided to depart upward four levels under U.S.S.G. § 4A1.3 on the basis that Potts's criminal-history category under-represented the seriousness of his criminal history and/or the likelihood that he would commit another crime. Based upon that departure, the new Guidelines range was 41 to 51 months for unauthorized-access-device fraud. The district court also varied upward an additional nine months, ultimately imposing a sentence of 60 months' imprisonment for unauthorized-access-device fraud.

The district court then turned to Potts's convictions for aggravated identity theft.  Under 18 U.S.C. § 1028A(b)(2), Potts's first conviction for aggravated identity theft had to run consecutively to his conviction for unauthorized-access-device fraud, bringing his total sentence up to seven years.  Potts was convicted of two counts of aggravated identity theft, however, and § 1028A(b)(4) permitted the district court to act in its discretion, in accordance with any applicable Guidelines and policy statements, to determine whether to run those sentences consecutively or concurrently.  After reviewing the probation officer's recommendation and hearing argument from the parties, the district court ordered that Potts's sentences for aggravated identity theft run consecutively, for a total of four years.  All told, the district court sentenced Potts to nine years of imprisonment—60 months for unauthorized-access-device fraud, and 48 months for two counts for aggravated identity theft.

That left one remaining matter for the district court to resolve.  By way of background, before Potts was indicted for his actions in this case, he was arrested for and pleaded guilty to a charge of domestic violence against his spouse.  As a result, he was in state custody at the time of his federal indictment.  In the state court matter, Potts received a sentence of one-to-five years in prison, with parole eligibility beginning in 2019.  And pursuant to U.S.S.G. § 5G1.3(d), the district court had discretion to run that nine-year sentence concurrently, partially concurrently, or consecutively to Potts's not-yet-completed state term of imprisonment.

Here again, the district court reviewed the probation officer's recommendation and heard argument from the parties.  Taking all of that into account, the district court specified that Potts's nine-year federal sentence would be served consecutively to his undischarged term of state imprisonment.  During sentencing, Potts objected only to the court's decisions to depart and vary upward.

## II. ANALYSIS

Potts asks that his sentence be vacated and his case remanded for resentencing.  To Potts's mind, the district court made several errors in setting his sentence, meaning that his sentence was procedurally unreasonable.  They include: (1) running Potts's two mandatory aggravated-identity-theft counts consecutively to each other and to his sentence for

unauthorized-access-device fraud, (2) running Potts's entire sentence consecutively to his undischarged term of state imprisonment, and (3) departing upward under U.S.S.G. § 4A1.3 when fashioning Potts's sentence for unauthorized-access-device fraud.  Potts also argues that his sentence was substantively unreasonable.  We reject each of his arguments.

## A.      Potts's Sentence Was Procedurally Reasonable.

When evaluating a sentence for procedural reasonableness, we focus on how the district court calculated the sentence.  We ask whether the district court properly calculated the Guidelines range, remembered to treat that range as advisory, considered the sentencing factors in 18 U.S.C. § 3553(a) while refraining from considering impermissible factors, selected the sentence based upon facts not clearly erroneous, and adequately explained why it chose the sentence.  *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

How we assess these considerations is influenced by our standard of review.  Where the defendant has preserved a sentencing argument below, we review the district court's decision to reject that argument for an abuse of discretion.  *United States v. Parrish*, 915 F.3d 1043, 1046–47 (6th Cir. 2019).  That is the case for the district court's upward departure under § 4A1.3.  But Potts did not object after the sentence was announced to two other decisions he challenges today: (1) running Potts's aggravated-identity-theft counts consecutively to each other; and (2) running Potts's federal sentence consecutively to his state sentence.  In view of Potts's failure to raise those issues before the district court, we review those claims only for plain error.  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

### 1.  *The District Court Did Not Commit Plain Error By Ordering Potts's Aggravated-Identity-Theft Sentences To Run Consecutively.*

Up first is Potts's contention that the district court erred in ordering that Potts's two aggravated-identity-theft sentences run consecutively, rather than concurrently.

We first note that 18 U.S.C. § 1028A prescribes a precise penalty for aggravated-identity-theft crimes.  While criminal statutes often provide a minimum and maximum sentence, with the Guidelines assisting the sentencing judge in deciding where between those guideposts to set a

sentence, convictions under § 1028A are sentenced to exactly two years' imprisonment. In that way, a district court's sentencing analysis is constrained. But it is less constrained where a defendant is convicted of multiple counts of aggravated identity theft. In that instance, § 1028A(b)(4) grants the district court discretion to decide whether sentences for those counts should run concurrently with, or consecutively to, each other. To guide that determination, Congress instructed the district courts that "such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 1028A(b)(4).

Turning to the Guidelines, in U.S.S.G. § 5G1.2, the Sentencing Commission provided general instructions to district courts imposing a sentence with multiple convictions. No Guidelines language specifically discusses aggravated-identity-theft offenses, but the Commission did address the specific offense in Application Note 2(B) to § 5G1.2. There, the Commission lists a number of "non-exhaustive . . . factors" a district court should consider when imposing a sentence that involves multiple aggravated-identity-theft offenses. They include: (1) the "nature and seriousness of the underlying offenses;" (2) "[w]hether the underlying offenses are groupable under § 3D1.2 (Groups of Closely Related Counts);" and (3) "[w]hether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence." U.S.S.G. § 5G1.2, cmt. n.2(B). With respect to the second consideration, groupability, the Guidelines recommend that where multiple underlying offenses are groupable, the corresponding "counts of 18 U.S.C. § 1028A should run concurrently with one another." *Id.*

In deciding to run Potts's sentences consecutively, rather than concurrently, the district court did not expressly reference § 5G1.2, nor did it expressly analyze by name the factors in Application Note 2(B). Potts argues that the district court was required to refer to § 5G1.2 and the Application Note factors when setting forth its rationale for issuing consecutive § 1028A sentences.

This Circuit has not yet addressed whether a district court, in selecting a sentence involving multiple counts of aggravated identity theft, must specifically address the factors in § 5G1.2, Application Note 2(B), in addition to any other relevant sentencing factors. Many of our

sister circuits, however, have considered how to weigh the form and the substance of the Application Note 2(B) factors, including what express statements, if any, a district court must make at sentencing. Some circuits are more lenient than others. These circuits, when reviewing a sentence involving aggravated identity theft, look primarily to the substance of that sentencing analysis rather than the form it takes. Of the more rigid approaches, the Seventh Circuit has held that the failure either to reference § 5G1.2 or formally to recognize the factors in Application Note 2(B) can constitute plain error.

That Seventh Circuit's decision is *United States v. Dooley*, 688 F.3d 318, 320–21 (7th Cir. 2012) (Easterbrook, C.J.). In *Dooley*, the defendant stole personal information from hospital patients. For that conduct, he was convicted of nine offenses, three of which were aggravated identity theft. *Id.* at 319. At sentencing, the district court neither referred to § 5G1.2 nor addressed most of the Application Note factors, including whether the six underlying offenses were groupable. *Id.* at 321 (noting that the district court discussed § 3553(a)(6), disparity in sentencing, when evaluating the appropriate length of the defendant's sentence rather than the Application Note factors). Employing a formalistic approach, the *Dooley* court concluded that because the underlying statute, § 1028A(b)(4), requires a sentencing court to exercise its discretion "in accordance with any applicable [G]uidelines and policy statements," consideration of the Application Note 2(B) factors is "essential to the statutory process." *Id*. And there, the record was so bereft of these considerations, the government conceded that the failure to reference § 5G1.2, the relevant Application Note, or the applicable considerations included therein, constituted plain error. *Id.*

Other circuits, however, have been less rigid in considering whether a district court properly considered the factors in § 5G1.2 Application Note 2(B) during sentencing. These circuits tend to assess the substance of the sentencing process, asking whether the Application Note 2(B) factors were considered in some form during sentencing. By our count, the Third, Fourth, Ninth, and Eleventh Circuits have all held, in one form or another, that express reference to § 5G1.2 and its Application Note factors during sentencing is not required. *See, e.g.*, *United States v. Savage*, 885 F.3d 212, 230 (4th Cir. 2018); *United States v. Fudge*, 592 F. App'x 86,

91–92 (3d Cir. 2014); *United States v. Hung Quoc Bui*, 500 F. App'x 658, 660 (9th Cir. 2012); *United States v. Bonilla*, 579 F.3d 1233, 1245 (11th Cir. 2009).

In the Eleventh Circuit, for example, a district court need not explicitly reference the Application Note 2(B) factors during sentencing where it nonetheless considered those factors in some manner. *See Bonilla*, 579 F.3d at 1245 (finding no abuse of discretion where the district court did not reference § 5G1.2 Application Note 2(B) factors by name but "went through all the 5G1.2 factors"). Indeed, the Eleventh Circuit has followed this reasoning consistently through a series of decisions dating back to 2009. *See, e.g.*, *United States v. Doe*, 536 F. App'x 871, 874 (11th Cir. 2013) (finding that district court implicitly considered the § 5G1.2 Application Note factors when discussing the nature and seriousness of the defendant's offense and considering the factors listed in 18 U.S.C. § 3553(a)(2), even where the district court did not expressly reference § 5G1.2 or the Application Note factors during sentencing); *United States v. Bradshaw*, 445 F. App'x 176, 180–81 (11th Cir. 2011) (failure to reference the § 5G1.2 Application Note 2(B) factors did not constitute plain error where no binding precedent required the district court to do so, and the district court considered the nature and seriousness of the underlying offenses and the § 3553(a)(2) factors, two of the Application Note factors).

The Fourth Circuit similarly employs a less formalistic approach in reviewing a sentence to which the Application Note 2(B) factors apply. In circumstances like those present here, the Fourth Circuit has held that a district court did not abuse its discretion in running two aggravated-identity-theft counts partially consecutively, despite the absence of a formal application of the § 5G1.2 Application Note 2(B) factors. *Savage*, 885 F.3d at 230. The district court there did not refer to § 5G1.2 during the sentencing hearing. But it did identify its reasons for issuing a partially consecutive sentence when it considered the § 3553(a) sentencing factors. Having said as much, the district court's failure to reference expressly § 5G1.2 or Application Note 2(B) did not undermine the court's ultimate sentencing decision. *Id.*

The Third and Ninth Circuits, albeit in unpublished decisions, have also accepted sentencing proceedings that failed to reference expressly the § 5G1.2 Application Note 2(B) factors during sentencing. *See Fudge*, 592 F. App'x at 91–92 (the "failure to expressly reference the § 5G1.2 Application Note 2(B) factors does not amount to plain error" where the district

court did not refer to the factors by name but nonetheless considered in substance the first and third factors); *United States v. Corbin*, 474 F. App'x 66, 69 (3d Cir. 2012); *Hung Quoc Bui*, 500 F. App'x at 660; *United States v. Egu*, 379 F. App'x 605, 608 (9th Cir. 2010) (noting that while the district court "could have more specifically addressed why consecutive sentences were appropriate despite the groupability of Defendant's underlying convictions," it did not abuse its discretion by running the § 1028A sentences consecutively).

Potts, for his part, primarily invokes the Second Circuit's decision in *United States v. Chibuko*, 744 F.3d 259, 264 (2d Cir. 2014). Potts says *Chibuko* supports his claim that the district court erred by failing to reference expressly the § 5G1.2 Application Note 2(B) factors. But the Second Circuit's rationale in *Chibuko* stakes out something of a middle ground between the two general approaches just identified. On the one hand, the *Chibuko* court remanded for resentencing a case in which the district court, during sentencing, "made no reference to Guidelines § 5G1.2; no reference to Application Note 2(B); and, no reference to groupability" in deciding to run multiple aggravated-identity-theft sentences consecutively. *Id.* at 263. Yet the Second Circuit made clear that it remanded the matter for resentencing not because the district court failed to name the relevant Guidelines section in a "robotic incantation," but because the second factor set forth in Application Note 2(B)—whether the multiple underlying convictions were groupable—was relevant but not at all considered by the district court. 744 F.3d at 263 (quoting *United States v. Cavera*, 550 F.3d 180, 193 (2nd Cir. 2008) (en banc)).

Taking all of this into account, we agree with the majority of our sister circuits that a district court's failure to reference expressly § 5G1.2 or Application Note 2(B) does not amount to plain error, so long as there is some indication that the district court assessed the relevant factors included in that section and Application Note. A functional approach, one that looks to the sentencing colloquy in its entirety, is well-suited in this setting.

As an initial matter, we note that at the time of Potts's sentencing, our Circuit did not require a district court to discuss explicitly the list of non-exhaustive factors provided in the comments to § 5G1.2. Nor did the weight of non-binding (but persuasive) authority at the time. The authority on the question was mixed, with an edge to substance over form. Accordingly, the

district court's actions could not have amounted to plain error. For an error to be plain, it must be clear and obvious—which it cannot be if it involves a question of first impression in this Circuit—especially one over which the remaining circuits were divided. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). These circumstances alone extinguish Potts's claim.

But even beyond those circumstances, we agree that a functional approach is better suited to assess whether a district court applied § 5G1.2 and its underlying considerations. And that functional approach, measured against the record below, dictates that no error occurred in sentencing Potts to serve his two aggravated-identity-theft counts consecutively. While not expressly referencing the factors in Application Note 2(B), the district court was aware of its discretion to run the sentences for Potts's aggravated-identity-theft convictions concurrently. It then discussed in substance two of the three § 5G1.2 Application Note 2(B) factors—factor one, the nature and seriousness of the underlying offense and factor three, the purposes of sentencing set forth in § 3553(a)(2), respectively—before imposing Potts's sentence. The district court started with the PSR, which stated that "the court must impose a consecutive sentence for the first aggravated-identity-theft violation, but the court has the discretion to run additional convictions for aggravated identity theft concurrently." Although neither party referenced § 5G1.2 during the sentencing hearing, each side discussed the district court's discretion to order the two aggravated-identity-theft sentences to be concurrent with or consecutive to each other.

In reaching its decision, the district court reviewed, in detail, both the nature and seriousness of Potts's offense as well as more broadly the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). In doing so, the district court addressed both the appropriate Guidelines range for unauthorized-access-device fraud as well as Potts's sentence "with the addition of the, [sic] of Counts 3 and 8 [for aggravated identity theft]." When looking at the nature and seriousness of Potts's offense, the district court described Potts as a "sophisticated mail thief" whose actions were "more serious than any of the stolen mail or stolen ID cases that [the court had] seen in 11 years on this bench." The district court found it particularly outrageous that Potts broke into A.W. and S.W.'s home multiple times to listen to their answering machine, call credit card companies and banks, and impersonate them. The district court also considered the other

factors listed in § 3553(a)(2), finding that Potts was highly likely to commit these crimes again, given that he had engaged in this same pattern of behavior for fifteen years. As to whether the sentence reflected just punishment and the seriousness of the offense, the district court noted that the Guidelines range at issue did not account for Potts's underlying home invasion, and it cited concerns about the need to deter similar future conduct. The overall length of the sentence, which included two consecutive two-year terms for the counts of aggravated identity theft, was thus necessary to promote respect for the law, deter Potts from continuing this behavior, and protect the public from future crimes.

To be sure, the district court did not address "whether the underlying offenses are groupable under § 3D1.2," the second factor in Application Note 2(B) to § 5G1.2. But here Potts pleaded guilty to only one underlying offense, and § 3D1.2 looks to the groupability of the underlying counts of conviction. In this respect, today's case is distinguishable from *Chibuko* and *Dooley*. In both *Chibuko* and *Dooley*, the district courts entirely failed to consider at least one relevant factor from Application Note 2(B). In *Dooley*, the district court did not refer to § 5G1.2 by name nor did it appear to analyze several of the § 5G1.2 Application Note 2(B) factors, including groupability. 688 F.3d at 321. Here, on the other hand, the district court addressed both the first and third factors, and groupability was not at issue because Potts pleaded guilty to only one underlying offense.

That said, the Seventh Circuit's point in *Dooley* is well taken: Because Congress, through § 1028A(b)(4), directed courts to consider the applicable Guidelines and policy statements when considering whether to order consecutive or concurrent sentences for aggravated identity theft, each relevant factor in § 5G1.2 Application Note 2(B) should be considered. But as the Second Circuit aptly acknowledged, the amount of explanation required varies with the circumstances; "some cases will require an extended discussion of a given factor. Other cases may require only a brief mention or even need none at all." *Chibuko*, 744 F.3d at 263. Here, the district court sufficiently addressed the factors relevant to this case and, in turn, explained its rationale. Under these circumstances, we see no plain error in the district court's imposition of two consecutive two-year sentences for Potts's convictions for aggravated identity theft.

  2. *The District Court Did Not Commit Plain Error By Running Potts's Federal Sentence Consecutively To His State Sentence.*

Many of these same themes are present in Potts's next assertion: that the district court erred, under § 5G1.3, in running his federal sentence consecutively to an undischarged term of state imprisonment. At the time of his federal sentencing, Potts was serving a sentence for a domestic violence conviction in Michigan state court. That sentence was for one-to-five years in prison, with parole eligibility beginning in 2019. As he did in other claims, Potts argues here too that the district court committed plain error, and thus imposed a procedurally unreasonable sentence, when it failed expressly to reference § 5G1.3 before deciding whether to run his federal and state sentences consecutively.

Much like Application Note 2(B) to § 5G1.2, Application Note 4(A) to § 5G1.3 articulates factors sentencing courts should consider before deciding whether to run state and federal sentences consecutively. They include: (1) the § 3553(a) factors; (2) the type and length of the prior undischarged sentence; (3) the time served and likely to be served on the undischarged sentence; (4) the procedural posture of the undischarged sentence (whether it was imposed in state or federal court and when it was imposed); and (5) any other relevant circumstance. U.S.S.G. § 5G1.3, cmt. n. 4(A).

Unlike our consideration of Potts's aggravated-identity-theft convictions, where the most relevant authority came from outside the Circuit, we have previously addressed whether a § 5G1.3 analysis requires a district court to engage in a separate recitation of the Guidelines provision or its underlying considerations. And we have not imposed such a requirement. That is, we do not ask whether a district court "explicitly reference[d] the § 5G1.3 considerations" when determining whether to run a sentence consecutively to or concurrently with another. *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009) (reviewing for abuse of discretion); *see also United States v. Harmon*, 607 F.3d 233, 237, 239 (6th Cir. 2010) (reviewing for plain error). Instead, reviewing "the totality of the record," we ask whether the district court, in imposing consecutive sentences, followed the rationale provided in Application Note 4(A). *Harmon*, 607 F.3d at 239; *United States v. Johnson*, 553 F.3d 990, 998 (6th Cir. 2009). So long as that rationale is "generally clear," either in a statement by the district court or by reference to the PSR

or other documents, the district court does not abuse its discretion (let alone commit plain error) and impose a procedurally unreasonable sentence, by failing to expressly consider the factors contained in § 5G1.3 Application Note 4(A). *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012) (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998) (reviewing procedural-unreasonableness challenge under an abuse-of-discretion standard)).

Reviewing the totality of the record below, we are confident the district court adequately considered those factors. Both the parties and the PSR discussed the indeterminate nature of Potts's undischarged state prison term, his time served, and the time likely to be served before release. The PSR explained the details of the state conviction and sentence. Because Potts was in federal custody, his counsel informed the district court that Potts was unable to complete a domestic violence class required by his state sentence, was thus denied parole, and, as a result, could be confined in state prison for an additional year. The government argued against Potts's request for a concurrent sentence because it believed that the domestic-violence offense and the instant offense were "two entirely different events" that needed to be punished separately. Taking all of this into consideration, the district court determined that consecutive sentences were warranted to justly punish Potts, protect the public, deter others from committing similar crimes, and otherwise promote respect for the law.

As already discussed, the district court also engaged in an extensive discussion of the § 3553(a) factors before fashioning its sentence, another consideration in § 5G1.3 Application Note 4(A). Together, these considerations are sufficient to support the decision to impose a consecutive sentence, and we do not require a district court to repeat that analysis when assessing whether to impose a sentence consecutive to a state sentence. *Berry*, 565 F.3d at 342–43. *See also Harmon*, 607 F.3d at 239; *United States v. Ward*, 436 F. App'x 601, 605 (6th Cir. 2011) (upholding a sentence on plain error review even though the district court did not mention § 5G1.3 but analyzed the § 3553(a) factors intertwined with its decision to impose consecutive sentences). The district court thus committed no error at all, let alone plain error.

3. *The District Court Did Not Abuse Its Discretion By Departing Upward.*

As his final claim of procedural unreasonableness, Potts cites the district court's decision to apply a four-level upward departure under U.S.S.G. § 4A1.3. Section 4A1.3 provides that a sentencing court may depart upward from a calculated Guidelines range when reliable information—such as prior sentences or misconduct that is insufficiently accounted for— "indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or [risk of recidivism]." U.S.S.G. § 4A1.3(a)(1).

In reviewing for procedural reasonableness a sentence that includes an upward departure, we ask only whether the district court followed the requisite procedures when applying the departure; whether that departure was appropriate is a question of substantive reasonableness. Those procedures were followed. Potts received notice that the district court was considering an upward departure under § 4A1.3. *See* Fed. R. Crim. P. 32(h). Before ordering a departure, the district court properly calculated the initial Guidelines range. In later explaining why an upward departure was necessary, the district court followed the structure of the Guidelines, as required by § 4A1.3, and addressed all of the § 3553(a) sentencing factors, in particular, the seriousness of Potts's offenses and the likelihood that he would recidivate. *See* U.S.S.G. § 4A1.3(a)(4)(B) cmt. n.2. The district court also provided a statement of reasons, as required by 28 U.S.C. § 3553(c)(2).

Against this backdrop, Potts claims that the district court nonetheless committed procedural error by failing to explain sufficiently its decision to select a four-level departure, "rather than, for example, a [three]-level or [five]-level departure." We disagree. In assessing whether to depart upward, this district court was guided by § 4A1.3. As explained in that section, for a defendant with a category VI criminal history score, the district court, when considering an upward departure, must move incrementally along the sentencing table to the next higher offense level until it finds an appropriate Guidelines range. Following those instructions, the district court both explained its rationale for choosing to depart, and then explained how it decided that a departure would result in what it considered to be an appropriate Guidelines range for Potts. As to its rationale for the upward departure, the district court emphasized that Potts was likely to recidivate, noting Potts's tendency to repeat his criminal conduct. Specifically, the

district court examined Potts's prior identity-theft crimes as well as his string of domestic-violence convictions, including the conviction for which he was currently serving his state-court sentence. And as to why it chose a four-level upward departure, the district court looked to Potts's most recent conviction, one for assault. Noting that the base offense level for simple assault was four, the district court utilized that figure as its rationale for the four-level departure.

This explanation was procedurally sufficient. Although we require that a sentencing court adequately explain why it has opted to depart or vary, *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008), we do not require that explanation to include the court's rationale for rejecting other possible sentences. *See United States v. Sexton*, 889 F.3d 262, 265 (6th Cir. 2018) (citing *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006)). With respect to the specific instance in which the defendant has a category VI criminal history, we have previously stated that a district court, in deciding to depart upward pursuant to U.S.S.G. § 4A1.3, need not provide a "mechanistic" explanation as to "why each intervening range is inappropriate before settling on an appropriate range and sentence." *Id.* (quoting *United States v. Herrera-Zuniga*, 571 F.3d 568, 588 (6th Cir. 2009) (internal quotation marks omitted)). Such explanations may well be useful. But a sentencing decision is not arbitrary simply because it does not weigh one possible departure against another. *Id.*

In other words, we do not require the district court to cover every possible sentencing alternative. We simply ask whether the district court showed its work such that we can meaningfully review how and why it crafted a sentence. *See United States v. Chiolo*, 643 F.3d 177, 182 (6th Cir. 2011). Absent an express directive to the contrary, we do not require "magic words," nor do we require a mechanical recitation of every factor or provision relied upon by the district court. *See United States v. Dexta*, 470 F.3d 612, 614–15 (6th Cir. 2006). Because the district court more than adequately explained its reasoning for the imposition of its sentence, we find no procedural error warranting reversal.

**B.      Potts's Sentence Was Substantively Reasonable.**

Lastly, Potts claims that his 108-month sentence is substantively unreasonable. In contrast to procedural reasonableness, substantive reasonableness focuses on the length of the sentence, looking, in essence, to see whether the sentence is needlessly harsh or inappropriately lenient. *See Rayyan*, 885 F.3d at 442. Here too, our standard of review is deferential. We ask whether the district court abused its discretion in setting the sentence when evaluating the extent of any departure or variance from the Guidelines range, and we consider the totality of the circumstances. *See Gall*, 552 U.S. at 51. While a sentence outside of the Guidelines range is not afforded a presumption of reasonableness, neither is it subject to a presumption against reasonableness. *Herrera-Zuniga*, 571 F.3d at 590.

In matters of sentencing, we must respect the front-row view enjoyed by the district court. That court, in the first instance, with the defendant before it, with the benefit of extended argument from the parties, and sometimes even with the benefit of witness testimony and other evidentiary considerations, weighs the range of sentencing factors relevant in setting a term of confinement. *Id.* at 583 ("[Q]uestions concerning sentencing departures necessarily address the district court's refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.") (internal citations and quotations omitted). For these reasons and others, we give considerable deference to a district court's decision about the appropriate length of a sentence, including any decision to depart or vary. When evaluating upward departures in particular, we consider, among other things, the severity of the prior criminal conduct, the defendant's likelihood to recidivate, previous lenient sentences, whether the sentence will deter future criminal conduct, whether the defendant needs to be isolated from the community, and the length of time needed to achieve rehabilitation, if possible. *United States v. Griffin*, 530 F.3d 433, 441 (6th Cir. 2008) (citation omitted).

Based upon its assessment of the various aspects just identified, the district court departed upward from a sentencing range of 30 to 37 months to 41 to 51 months, with an additional nine-month variance from the top of that range, to 60 months. Potts contends that the district court failed properly to weigh mitigating factors favorable to Potts, including the nature of the offense and Potts's personal history. Potts pointed out below that the underlying offense conduct

occurred over two years ago, and that Potts owed a relatively small amount of money in restitution. Potts added that he still had part of his state prison sentence to serve. And Potts, we note, showed remorse for his actions and expressed a desire to be a better father to his son. Even taking into account these considerations and measuring the decision below for an abuse of discretion, we do not view as unreasonable the district court's conclusion that Potts's criminal history category substantially under-represented the likelihood that he would commit other crimes.

Contrary to Potts's claims, the district court carefully considered whether a departure was appropriate in this unique setting: "I think counsel is aware that I rarely invoke this kind of guideline calculation. And so I spent a considerable time looking at 4A, and particularly 4A1.3(a)(1)[,] which sets out the standard for imposing an upward departure because of an inadequacy of criminal history category." The district court emphasized the similarities between Potts's prior convictions and his current conduct, noting that "it's a pattern that seems to be embedded in Mr. Potts' criminal history, maybe even his lifestyle." Indeed, five of Potts's nine prior convictions involved conduct that included theft, possession, and/or use of someone else's personal information. At least one of those convictions, like today's case, involved breaking into homes to steal personal information. Another conviction was before the same district judge, in that instance, for the offense of aggravated identity theft. Potts's pattern of committing the same crimes in the same way justified the district court's conclusion that Potts would likely recidivate. *See United States v. Musick*, 601 F. App'x 414, 418–19 (6th Cir. 2015).

Nor do we see any abuse of discretion in the district court's decision to vary upward nine months past the calculated departure range. In so doing, the district court properly weighed the § 3553(a) factors. The district court discussed the seriousness of the offense, describing it as "more serious than any of the stolen mail or stolen ID cases that I have seen in 11 years on this bench. . . acts of breaking into a victim's home, not once but three times, listening to the answering machine, calling credit card companies and banks, impersonating the victim, this I find outrageous." And it discussed the history and characteristics of the defendant, including his lengthy criminal record, as well as the need to protect the public, promote respect for the law, impose just punishment, and deter Potts from future crimes. After weighing these

considerations, the district court imposed an above-Guidelines sentence.  Potts has not shown that the district court abused its discretion in doing so.

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.