NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0443n.06

No. 22-3349

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 13, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| ALEXANDER CORTES, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

OPINION

Before: CLAY, KETHLEDGE, and MATHIS, Circuit Judges.

KETHLEDGE, Circuit Judge. Alexander Cortes pled guilty to four firearm-related offenses and received an 84-month term of imprisonment. Cortes appeals his sentence in several respects. We find no error and affirm.

I.

On November 24, 2020, Cortes devised a scheme to steal a Dodge Challenger from his girlfriend's brother. Cortes, his girlfriend Madison Backus, and Sarah Corona drugged Backus's brother by putting Xanax in his coffee. When her brother fell asleep, Backus took the keys and gave them to Cortes. Backus told officers that Cortes had threatened to kill her and her brother if she did not help him.

That night, Cortes, Backus, and Corona stayed in the Challenger until it ran out of gas. Then all three of them moved to Cortes's Honda Accord. According to Corona, Cortes had a firearm on him the whole time and had held her against her will. Cortes fell asleep in the car, and

Corona went to hide at a friend's apartment. Cortes came looking for Corona in the Honda—driven by Backus—and Cortes yelled and fired one shot before leaving.

The next day, November 25, officers found the stolen Challenger abandoned, out of gas, and with the wrong license plates on it. From inside the Challenger, officers recovered a loaded Sig Sauer 9mm pistol, over 100 rounds of ammunition, three bags that contained a total of 85.8 grams of marijuana, other suspected drugs, and a cellphone belonging to Corona. Text messages on Corona's phone confirmed that Cortes had supplied her drugs (which she admitted included methamphetamine, Xanax, and heroin). One text message from Cortes stated, "No you aint' my only customer bu[t] you gonna be my only one that sets sh_t up and has someone else come through[,] I've f_cked people up over that."

On November 28, Backus left Cortes at a Walmart, drove away in his Honda, and went to the police to report that Cortes had assaulted her the day before. Specifically, Backus said that Cortes had punched her several times (hard enough to make her urinate) because he had been upset about how she parked the car. Backus also showed officers text messages from Cortes on her cellphone in which he had threatened to kill her, told her how to handle drugs on his behalf, and told her how to steal the keys to her brother's Challenger. Backus told police that Cortes had a Sig Sauer, a Glock, a TEC-9, and a compact gun that he had promised to give her (but did not). When officers searched the Honda, they found an Intratec semiautomatic pistol, several rounds of ammunition, some suspected marijuana, and a wallet containing Corona's identification.

Finally, on December 8, officers responded to a motel room where they arrested Cortes on a warrant for assaulting Backus. There officers found a Glock 9mm pistol next to marijuana and methamphetamine, along with three loaded Glock magazines, one loaded Sig Sauer magazine, and keys to both the Honda and the stolen Challenger. Cortes told officers he had stolen the Challenger

with Backus, that he hit her, and that he possessed firearms for protection because "everyone wanted to rob or attack" him.

Cortes thereafter pled guilty as charged to four firearm-related offenses. Specifically, Cortes admitted that he had unlawfully possessed the Sig Sauer 9mm pistol and the Glock 9mm pistol (Counts 1 & 3), and that he had aided and abetted false statements his co-defendant Jasmine Muscatello had made to the firearms dealer when purchasing those firearms for Cortes (Counts 2 & 4). *See* 18 U.S.C. §§ 922(g)(1), 922(a)(6), 924(a)(2), and 2.

The probation officer recommended a guidelines range of 57 to 71 months' imprisonment, based on an offense level of 19 and a criminal-history category of V. That calculation included a four-level enhancement for the possession or use of a firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6)(B). But the probation officer also recommended two upward departures and an upward variance from the guidelines range. Cortes did not object to any of the facts in the presentence report.

At sentencing, the district court overruled Cortes's objection to the first departure—under U.S.S.G. § 4A1.3(a)—and increased his criminal-history category to VI. The district court also considered both a further upward departure under U.S.S.G. § 5K2.21 and an upward variance under 18 U.S.C. § 3553(a). Defense counsel objected, the government argued in favor of both, and Cortes spoke on his own behalf. The district court articulated the reasons for its further upward departure and upward variance, and sentenced Cortes to concurrent 84-month terms of imprisonment to be followed by three years of supervised release. This appeal followed.

II.

We review the procedural and substantive reasonableness of Cortes's sentence for an abuse of discretion. *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020).

A.

Cortes challenges the district court's imposition of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). That enhancement applies when a defendant possessed the firearm for which he was convicted "in connection with" another felony offense. *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001). When, as here, the other offense is drug trafficking, the enhancement applies if the "firearm is found in close proximity to drugs" because "the presence of the firearm has the potential of facilitating" the offense. *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (quoting U.S.S.G. § 2K2.1 cmt. n.14(B)(ii)). We review the district court's factual findings for clear error and give deference to its determination that the firearm was "used or possessed in connection with" the other felony. *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011).

The facts on which the district court relied in imposing this enhancement were undisputed. Specifically, the court found that Cortes had left the Sig Sauer firearm in the stolen Challenger with 85.8 grams of marijuana; that Cortes possessed the Glock found in the motel room next to 2.62 grams of actual methamphetamine; that those quantities of marijuana and methamphetamine were distribution amounts; and that Cortes had been trafficking in drugs. In addition, Cortes himself told officers that he kept firearms "for protection because everyone wanted to rob or attack him." These facts amply support the district court's conclusion that Cortes possessed firearms in connection with his drug trafficking.

Cortes counters that the district court should have required the government to present evidence to prove these facts at sentencing. We have already rejected that argument. *See United States v. Lang*, 333 F.3d 678, 681–82 (6th Cir. 2003); *see also* Fed. R. Crim. P. 32(i)(3)(A) (a

district court "may accept any undisputed portion of the presentence report as a finding of fact"). The enhancement was proper.

B.

Cortes challenges both of the upward departures applied by the district court.

1.

Cortes argues that the district court lacked an adequate basis to depart upward under U.S.S.G. § 4A1.3(a). That provision allows a district court to depart upward when "reliable information" indicates that the defendant's criminal-history category "substantially underrepresents" the seriousness of his criminal past or his likelihood to recidivate. U.S.S.G. § 4A1.3(a)(1). The district court found both grounds for departing upward here. Specifically, in a span of six years, Cortes amassed numerous convictions for domestic violence, aggravated assault, assault, and felonious assault. In one of those offenses, Cortes broke his girlfriend's nose; in another, he tried to smother a woman with a pillow before punching her and slamming her head into a wall. That second altercation began when the woman interfered with Cortes's plan to have sex with a 17-year-old. In another assault—treated only as a misdemeanor—the female victim received bruises to her face, arms, legs, and chest. And in another case Cortes hit the victim on the head with a metal pipe. Cortes also had convictions for aggravated menacing and violation of a restraining order by threatening to assault and shoot the victim. Yet for none of these offenses did Cortes receive a sentence longer than two years. The court also found that Cortes's conduct during his prior terms of supervision, and while incarcerated, and during his presentence interview in this case, all indicated that he will likely commit more crimes. The district court had ample reason to depart upward under § 4A1.3(a)(1).

Cortes's arguments to the contrary are insubstantial. He asserts that the departure was not supported by "reliable information," but none of his criminal history was disputed. Cortes also contends that his original guidelines range adequately represented his criminal conduct because eleven of his fourteen adult convictions resulted in criminal history points. But Cortes was only one point shy of category VI without the departure; and at least five of his convictions (some of them for violent assaults) did not result in any points at all. The district court's departure under § 4A1.3(a)(1) was not an abuse of discretion.

2.

Cortes also challenges the district court's upward departure under U.S.S.G. § 5K2.21. That provision allows a district court to depart upward based on uncharged conduct in the case before it. The probation officer recommended this departure because Cortes's conduct between November 24 and December 8 was "violent and dangerous" and was not accounted for in his original guidelines range. The court agreed: that range did not account for Cortes's scheme to drug his girlfriend's brother and to steal his Challenger; nor did it account for Cortes's possession of the Intratec pistol that he likely fired while looking for Corona; nor did it fully account for Cortes's drug trafficking.

Cortes disputes none of these points. Instead, his argument is procedural: he says the PSR cited the wrong guideline for this departure (it cited § 5K2.1 instead of § 5K2.21) and this gave him no notice of the departure. But Criminal Rule 32(h) requires only "reasonable notice" of the court's intention to depart. *See United States v. Zabel*, 35 F.4th 493, 506–07 (6th Cir. 2022). And here the PSR gave ample notice of the grounds for this departure and the reasons why the probation officer thought the departure was warranted. Cortes therefore had good reason to anticipate this

departure, notwithstanding the PSR's typographical mistake regarding the applicable section of the guidelines.

Finally, Cortes challenges the substantive reasonableness of his sentence. We review the sentence here for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Suffice it to say that we reject this argument for the reasons stated by the district court. *See United States v. Potts*, 947 F.3d 357, 371–72 (6th Cir. 2020).

*     *     *

The district court's judgment is affirmed.