NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0100n.06

Case No. 25-1604

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>RAUL ROBLEDO,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN<br><br>O P I N I O N</td></tr>
</table>

BEFORE: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Raul Robledo pleaded guilty to possession with intent to distribute cocaine. After applying multiple reductions relating to Robledo's minor role in the offense, the district court sentenced Robledo to a middle-of-the-Guidelines sentence of 37 months in prison. On appeal, Robledo argues that the district court gave too much weight to the Sentencing Guidelines and too little to the statutory factors for sentencing, so his sentence is substantively unreasonable. We disagree and AFFIRM.

**I.**

*A. Factual Background*

Following the recent death of his mother, Raul Robledo drove from Michigan to Texas for a two-week visit with family. As Robledo prepared to return to Michigan, Tyrone Munoz (Robledo's cousin) asked Robledo for a ride to Chicago, Illinois. Robledo obliged. En route to

the Windy City, Munoz informed Robledo that they would be picking up drugs to deliver to a buyer in Grand Rapids, Michigan. Unbeknownst to Munoz (and Robledo), law enforcement had used a confidential source to contact Munoz and set the deal in motion.

Once in Chicago, Robledo—at Munoz's behest—rented a vehicle for Munoz. Driving separately, Robledo followed Munoz to a secondary location where Munoz picked up a duffle bag containing brick-shaped packages of cocaine. After the pick-up, Munoz drove the rental car to a suburb of Grand Rapids, with Robledo still in tow. Once in Michigan, they stopped at a local shopping center. There, Munoz took one of the bricks of cocaine from the duffle bag in his trunk and gave it to Robledo to hold onto until they met with the buyer. Munoz then directed Robledo to a nearby hotel to meet the buyer.

Instead of a buyer, Robledo and Munoz were met by law enforcement. Officers observed a single "brick-like object wrapped in brown duct tape" in plain view on the passenger seat of Robledo's car. (PSR, R. 61, PageID 178). Using a drug-sniffing dog, officers discovered nineteen additional, similarly-wrapped packages of cocaine, each weighing one kilo, in the trunk of Munoz's rental car. Officers arrested Munoz and Robledo.

## B. Procedural Background

Robledo pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Before Robledo's sentencing, a probation officer prepared a presentence report ("PSR") recommending several reductions under the United States Sentencing Guidelines ("U.S.S.G."). Because he was responsible for twenty kilograms of cocaine, Robledo's base offense level started at 32. Off the top, he received a two-level reduction for his minor role in the offense, taking his base offense level to 30. The PSR then calculated reductions totaling another eleven levels based on the following: he was a minimal participant in the crime (minus

four levels), under U.S.S.G. § 3B1.2(a); his motivations were family related, he received no monetary compensation, and he had minimal knowledge about the scope and structure of the enterprise (minus two levels), under U.S.S.G. § 2D1.1(b)(17); he timely accepted responsibility (minus three levels), under U.S.S.G. § 3E1.1; and he was safety-valve eligible (minus two levels), under U.S.S.G. § 2D1.1(b)(18). These deductions brought Robledo's total offense level to 19. With a criminal history category II, Robledo's Guidelines range was 33 to 41 months in prison.

At sentencing, the district court affirmed the accuracy of the PSR's calculated Guidelines range. Both Robledo and the government agreed with that calculation. But Robledo moved for a downward variance from the Guidelines range for several reasons. Front and center were Robledo's minimal role in the crime and his cooperation with law enforcement. Beyond those considerations, Robledo also highlighted his relatively minimal criminal history, his substance-abuse issues and desire to address them, and the strength of his family ties. For its part, the government asserted that the Guidelines accounted for Robledo's "minimal role and mitigation," so "a sentence within that range [was] sufficient but not greater than necessary." (Sent. Tr., R. 84, PageID 278).

The district court denied Robledo's motion for a downward variance and sentenced him to 37 months in prison. He now appeals.

## II.

We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Our review of sentencing decisions is "highly deferential." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). This means that even if we "might reasonably have concluded that a different sentence was appropriate," that

determination would not be sufficient to disturb the district court's sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007).

**III.**

Robledo argues that the district court placed too much weight on the reductions he received for his minimal role and cooperation, and too little on his history and characteristics. Not so.

A defendant who challenges a sentence as substantively unreasonable is arguing that the sentence imposed was "greater than necessary[] to comply" with the general purposes of sentencing. *Id.* at 50 n.6 (citation omitted). In other words, the sentence is "too long," and the district court "placed too much weight on some of the § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442. Within-Guidelines sentences like Robledo's enjoy a rebuttable presumption of substantive reasonableness. *See United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Robledo has not overcome this presumption. He first contends that the district court gave short shrift to his history and characteristics. Yet the district court spent significant time considering this factor. It credited Robledo for his honesty during the investigation, and discussed his family connections, "stable upbringing," and "good childhood," as well as his mental-health struggles (particularly around the death of his mother), his history of substance use, his education and employment, and his criminal history. (Sent. Tr., R. 84, PageID 282). The court reviewed the PSR, Robledo's motion for a downward variance, letters of support, and the government's sentencing memo. Each source shed light on Robledo's history and characteristics. And nothing in the record leads us to conclude that the district court assigned too little weight to Robledo's history and characteristics.

To be sure, the district court discussed the Guidelines. For instance, it remarked on the multiple reductions Robledo received for his "lesser" role in the offense and his cooperation with the government. (*Id.* at PageID 278). While Robledo says these reductions shouldered an outsized share of the district court's reasoning for its 37-month sentence, the record shows a more searching review. Yes, the district court found that Robledo received "triple" credit for his minimal role, and the safety-valve reduction accounted for his cooperation. (*Id.* at PageID 280). And it concluded that the Guidelines "more than addressed" his minor role and cooperation. (*Id.*). But Robledo overlooks the district court's recognition of the Guidelines as but one factor "in an array of factors" to consider. (*Id.* at PageID 279).

Beyond the Guidelines, the district court discussed relevant § 3553(a) factors, including the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of the offense. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). The district court began with the "significant" nature of Robledo helping to bring twenty kilograms of cocaine to Michigan, and his personal possession of one kilogram. (Sent. Tr., R. 84, PageID 281). The "serious" impact of Robledo's conduct on his community also weighed in the balance. (*Id.* at PageID 282). Plus, it recognized that the sentence it imposed must provide adequate deterrence and protection of the public. *See* 18 U.S.C. § 3553(a)(2)(B), (C). And, consistent with § 3553(a)(2)(D), the district court considered Robledo's need for substance-abuse treatment and educational and vocational training. That the district court did not weigh the § 3553(a) factors in the way that Robledo would prefer does not mean that it imposed an unreasonable sentence. *United States v. Robinson*, 892 F.3d 209, 216 (6th Cir. 2018). All in all, the district court gave thoughtful consideration to each of the relevant factors. And it did not abuse its discretion in the process.

Robledo's additional arguments to the contrary fail.

*First*, Robledo posits that the district court made up its mind about a middle-of-the-Guidelines sentence before it even considered the § 3553(a) factors, based solely on Guidelines reductions. The record does not bear him out. The district court certainly acknowledged Robledo's lesser role in the crime as compared to his cousin, and it lauded his cooperation with the government. But it did not announce Robledo's sentence until after it had carefully discussed those points and the relevant § 3553(a) factors. So this argument is meritless.

*Second*, Robledo contends that the district court failed to explain how his history and characteristics factored into his sentence, rather than simply as considerations for treatment and programming in prison. It is true that the district court urged Robledo to take advantage of the programs and treatment offered in prison. But it did so in the context of examining Robledo's history and characteristics, which included his depression following the death of his mother, his drug and alcohol use, and his education and work history. Doing so was not improper as we have never imposed a one-size-fits-all way for district courts to explain their sentencing decisions. *See United States v. Potts*, 947 F.3d 357, 371 (6th Cir. 2020) (explaining that district courts need not recite certain "magic words" nor "mechanical[ly] recit[e]" every factor when fashioning a sentence). Instead, our concern lies in "whether the district court showed its work such that we can meaningfully review how and why it crafted a sentence." *Id.* The district court did that here. So we see no abuse of discretion.

**IV.**

Therefore, we AFFIRM.